Caswal Corporation v. Commissioner.
Caswal Corp. v. Commissioner
Docket No. 75127.
United States Tax Court
T.C. Memo 1960-143; 1960 Tax Ct. Memo LEXIS 147; 19 T.C.M. (CCH) 757; T.C.M. (RIA) 60143; June 30, 1960
H. A. Smith, pro se, 516 Felt Bldg., Salt Lake City, Utah. Norman H. McNeil, Esq., for the respondent. OPPER
Memorandum Findings of Fact and Opinion OPPER, Judge: This proceeding involves deficiencies in income tax for the calendar years 1954, 1955 and 1956 in the respective amounts of $1,779.18, $1,850.63 and $1,756.03. The question presented is whether petitioner in computing its taxable income may deduct, as trustee, net income of a trust currently distributed to the beneficiaries. Findings of Fact All of the facts have been stipulated by the parties, and are hereby found accordingly. Petitioner, a Utah corporation organized June 3, 1953, filed its Federal corporation income tax returns for the calendar years 1954, 1955 and 1956 with the district director of internal *148 revenue at Salt Lake City, Utah. Dan Morrison Meat Pies, Inc., hereinafter called Morrison, was incorporated in Utah on September 12, 1929. Morrison owned and occupied one parcel of improved real estate in Salt Lake City as its business premises. The other parcel of improved real estate which Morrison owned in Salt Lake City was leased to the General Electric Company, X-Ray Department, on April 25, 1951. This lease provided for an annual rental of $4,080 for a term of 5 years. In 1953, the stockholders, shares held by each (at a par value of $1 per share) and officers of Morrison were as follows: Shares
Office
Stockholders
Held
Director and
H. A. Smith
3,200
President
Gilbert Wallace
3,000
Director and
Leonard H. Carr
3,000
Treasurer
Bertha Carr *
200
Director and
Ernest Blakemore **
200
Vice-President
Morrison's business for many years prior to 1953 had been both successful and profitable. In 1952, upon preparation of Morrison's Federal income tax return, it was determined that a tax in the amount of $1,100 was due. This was the first occasion *149 when the corporation was required to pay an income tax in such an amount, which fact caused Smith to enter into discussion with Wallace and Carr and recommend to them that the business need not be operated in corporate form which required the payment of corporation income taxes. It was then determined that the corporation should be dissolved to avoid the further payment of both corporation and individual income taxes on the business profits. As a result of these discussions, plans and procedures were initiated looking towards the dissolution of Morrison. The process of dissolution under consideration by Smith, Carr and Wallace contemplated that the parcels of improved real estate would be deeded to them as tenants-in-common. However, they recognized that, in the event of the death of any partner, a probate of the estate would follow and involve extra costs and the problem of changes in legal title to the parcels of real estate. They recognized that the corporate form of doing business with the corporation holding title to the improved real estate obviated the need for concern over probate of the real estate in their individual estates. About the time it was determined that Morrison *150 should be dissolved, Smith, who is an attorney-at-law, became involved in a local probate matter concerning a decedent's estate wherein real estate had been placed in trust for the benefit of survivors. Smith understood from this proceeding that currently distributable income of a trust was not taxable for Federal income tax purposes. Smith proceeded to draft a proposed trust instrument wherein the two parcels of real estate were deeded in trust from Morrison to a local bank and the trustee was to distribute net rental income to Smith, Carr and Wallace. After reviewing the trust instrument, the bank's trust department advised Smith that its charges would be about $400 a year for administering such a trust. Smith, Carr and Wallace rejected this plan as being too expensive and then determined that a corporation formed by them could serve as trustee. They contemplated that such a corporation would take title to the real estate and assumed it would not be subject to Federal corporation tax on rent received and distributed under the trust. Without considering the value of the improved real estate and exclusive of goodwill, Morrison's assets on May 31, 1953 were as follows: Cash
$5,130.53
Accounts Receivable
93.60
Inventory of Raw Material
777.75
Chevrolet Truck No. 1 at book
499.83
Chevrolet Truck No. 2 at book
471.55
Machinery & Equipment at book
261.00
Walk-in Refrigerator at book
50.00
*151 As of the close of business May 31, 1953, Morrison had no outstanding liabilities. Smith, Carr and Wallace were desirous of continuing the operation of the meat-pie business carried on by Morrison, and they determined that a partnership form of business, utilizing the working assets of the corporation, would serve their purpose. As of June 1, 1953, Smith, Carr and Wallace formed a partnership to carry on the meatpie business formerly carried on by Morrison with the assets above described. Smith, Carr and Wallace contemplated that Leonard H. Carr would purchase the minority interest of his sister, Bertha Carr, and that Gilbert Wallace would purchase the interest of Ernest Blakemore in Morrison. The real estate owned and then used by Morrison as its business premises would be leased to the partnership composed of Smith, Carr and Wallace. On May 27, 1953, Morrison, by formal document, leased to Smith, Carr and Wallace, doing business as "Dan Morrison Meat Pies," a co-partnership, the improved real estate which Morrison was then using as its business premises. The lease agreement provided for a term of 5 years and that the co-partnership would pay annual rental to Morrison in the *152 amount of $3,300 at the rate of $275 per month. Also on May 27, 1953, the stockholders of Morrison resolved to dissolve as of the close of business on May 31, 1953. The written resolution for dissolution further recited that the real estate then owned by Morrison was to be conveyed to petitioner as trustee, referred to a trust agreement, and that the meat-pie business and assets (to include cash for working capital) of Morrison, other than the real estate, be transferred to a partnership consisting of Smith, Carr and Wallace. On May 27, 1953, petitioner had not been formally organized. Also on May 27, 1953, an application for corporate dissolution of Morrison was prepared and filed in the district court for Salt Lake County. On July 16, 1953, the above district court dissolved Morrison as of the close of business on May 31, 1953. On May 28, 1953, by warranty deed, Morrison conveyed to petitioner for a stated consideration in money and other valuable consideration, the title to the real estate which it occupied as its business premises. The deed noted the real estate was subject to a lease (presumably the lease to the co-partnership of Smith, Carr and Wallace) but made no reference *153 to a trust. On May 29, 1953, by warranty deed, Morrison conveyed to petitioner for a stated consideration in money and other valuable consideration, the real estate which was then occupied by General Electric Company under lease. The deed noted the real estate was subject to a lease but made no reference to a trust. On May 29, 1953, the articles of incorporation of petitioner were formally executed by its incorporators and the subscribers of the capital stock, who were Smith, Carr and Wallace with their respective wives. The articles of incorporation provided, in part, as follows: "V "The primary and specific object and purpose of the corporation shall be to engage in the general real estate and investment business and to act as Trustee in respect thereto, and to do all things and exercise all power and authority incident thereto or connected therewith. The foregoing enumeration of powers, however, shall not be construed to be a limitation or restriction upon the powers and authority of this corporation conferred upon it by law, but its powers shall be liberally construed to the end that this corporation may engage in and transact generally any and all kinds of business of *154 any nature whatsoever not prohibited by law in the places where said corporation is doing business." * * *
"XI "The private property of the stockholders shall not be liable for the indebtedness or obligations of the corporation." "XII "The capital stock of this corporation shall be nonassessable, provided however that these Articles may be amended as provided by the laws of the State of Utah so as to make said stock assessable." * * *
"XVI "The subscription to the capital stock of the corporation herein set forth is paid for in full by the incorporators causing to be conveyed to the corporation as Trustee the following described real estate situate in Salt Lake County, State of Utah: "PARCEL No. 1 * * *
"PARCEL No. 2 * * *
"pursuant to the provisions of the Trust Agreement dated the - day of May, 1953, which is hereby referred to, which property is necessary to the business of this corporation and which is accepted in full payment of the subscription to the capital stock as hereinbefore set forth." A sworn acknowledgment by Smith, Carr and Wallace at the conclusion of the petitioner's articles of incorporation states as follows: "That * * * [each] is one *155 of the incorporators named in the foregoing Articles of Incorporation; that it is their bona fide intention to commence and carry on the business mentioned in the foregoing Articles of Incorporation; that each party to the Articles of Incorporation has paid in full the amount of capital stock subscribed for by him and that more than ten per cent of the authorized capital of the corporation has been paid to the corporation in the manner set forth in said Articles of Incorporation; that affiants are familiar with the property received by said corporation and that the same is necessary to the business pursuits of this corporation and is worth in cash the amount for which it was received by said corporation." Also on May 29, 1953, Smith, Carr and Wallace joined with petitioner in a written agreement which was entitled a "Trust Agreement." The agreement provided, in part, as follows: "TRUST AGREEMENT "THIS AGREEMENT made and entered into this 29th day of May, 1953, by and between LEONARD H. CARR, H. A. SMITH and GILBERT WALLACE, all of Salt Lake City, Utah, First Parties, and CASWAL CORPORATION, a corporation of the State of Utah, Second Party, hereinafter referred to as 'Trustee, *156 '" "WITNESSETH: "WHEREAS First Parties have this day caused to be conveyed to Second Party as Trustee the following described real estate situate in Salt Lake County, State of Utah: "PARCEL No. 1 * * *
"PARCEL No. 2 * * *
"both of which parcels of real estate are improved and under lease providing for monthly payments of rent." "NOW, in consideration of the premises, IT IS HEREBY AGREED between the parties hereto as follows: "1. That Second Party will hold the title to said real estate in trust upon the trusts herein set forth and for the benefit of the beneficiaries herein named or designated. "2. The Trustee will receive all rents from said premises and will retain therefrom a reserve to pay the compensation of the Trustee at the rate of $100.00 per annum, and to pay all fire insurance premiums and all taxes or assessments upon or against said real estate, and to pay any cost of maintenance and repairs to said real estate, which maintenance or repairs shall have been deemed advisable by the Second Party in its exclusive discretion and for the best interests of the beneficiaries; and the net amount remaining after making provision for the foregoing obligations shall *157 be divided into three equal parts which shall be paid quarterly to the beneficiaries hereunder as follows: One-third of the net amount shall be payable to each of the First Parties during the remainder of the natural lives of First Parties; and upon the death of anyone of First Parties the one-third share payable to such deceased party shall be paid to his widow, providing she shall survive him, during the remainder of the life of the surviving wife; and in the event of the death of one of First Parties leaving no surviving wife, or upon the death of the surviving wife, the one-third of said net amount payable to such deceased party shall be paid equally to the children of such deceased party and, if any child of such deceased party shall have died, to the issue of such deceased child in equal shares per stirpes * * *
"5. It is agreed that the term of this trust shall be TWENTY FIVE YEARS unless the same is terminated before that time as herein provided, or extended as herein provided. It is also agreed that this Trust Agreement may be modified or terminated or extended any time by the written direction of two-thirds of the beneficiaries hereunder. In the event of termination of *158 this trust upon such direction the Trustee shall sell said real estate and divide the net proceeds therefrom among the beneficiaries in the proportions hereinbefore set forth unless the beneficiaries directing the termination of the trust have directed otherwise. In the event of a sale and if the business known as Dan Morrison Meat Pies is operating the proprietors of such business shall have the first refusal to purchase Tract No. 1 hereinbefore described. If at the end of 25 years two-thirds interest of the beneficiaries shall direct the extension of the period of this trust, then this trust shall continue in accordance with such direction. "6. If no direction to extend the period of this trust is given during the 25 year period of this trust and the term of this trust expires without such direction, then the real estate hereinbefore described and conveyed to said corporation as Trustee shall be and become the absolute property of Caswal Corporation, free from any trust limitation, responsibility or liability, to the end that all of the interest which the beneficiaries herein designated, or any of them, shall have in said real estate shall be such interest as is represented by *159 the stock they respectively own and hold in said corporation. "7. It is agreed by the parties hereto that the income from this trust is currently distributable and that the Trustee shall not be liable for income taxes accruing under the provisions of this trust but that the individual beneficiaries who are entitled to receive the income from this trust will be liable for income taxes thereon. The Trustee will, nevertheless, make an annual fiduciary return and supply to the beneficiaries of this trust information concerning the same." The above agreement was signed on behalf of petitioner by Smith as petitioner's president. Petitioner never filed a Federal fiduciary tax return. Petitioner reported no income on its Federal corporation tax returns for the years here involved, including the short year 1953, as compensation for administering a trust. Petitioner's business address is c/o H. A. Smith, 516 Felt Building, Salt Lake City 1, Utah. On May 31, 1953, Leonard H. Carr purchased the stock in interest of his sister, Bertha Carr, in Morrison. The planned purchase of Ernest Blakemore's stock interest in Morrison by Gilbert Wallace did not materialize. Blakemore became the *160 accountant for the partnership, Dan Morrison Meat Pies. He is not a partner in that business and owns no stock in petitioner. The capital stock of petitioner was never issued to Morrison but directly to Smith, Carr and Wallace. During the tax years involved, the only repair or maintenance items arranged and paid for by petitioner were the repair of a heating duct costing $75, and a furnace conversion from an oil burner to a gas burner costing $153.50. On July 20, 1953, in response to a conversation with a representative of General Electric Company regarding a proposal to reduce the rent and extend the lease on the property then rented by General Electric Company as well as provide for installation of new equipment in the building, Smith, as petitioner's president, rejected any proposal to reduce the rent but indicated a willingness to extend the term of the lease. In closing, Smith advised General Electric Company as follows: "For your information I desire to advise you that title to this property has been transferred to Caswal Corporation, which is a holding company organized by the three owners of Dan Morrison Meat Pie Company. Although the ownership has changed in name the *161 substantial ownership has not changed." Negotiations regarding renewal or extension of the lease to General Electric Company by petitioner were initiated on or about April 1, 1955. A letter from petitioner, c/o 516 Felt Building, Salt Lake City, Utah, to the General Electric Company proposed the lease be extended 5 years from its expiration date (1956) at the same annual rental. The letter, among other things, contained provisions for adjustment to the rent, improvement obligations petitioner would assume and noted that the real estate was now owned by petitioner. The formal extension between petitioner and General Electric Company of the lease transpired on January 30, 1956. The period of the lease was extended 5 years to October 1, 1961. On its tax returns for the taxable years involved herein, as well as the short year June 1 to December 31, 1953, petitioner reported gross income, deductions against gross income and net operating losses, as follows: 1953
1954
Gross Income
Rents
$4,645.00
$7,380.00
Deductions
Remittances to beneficiaries
$3,750.00
$6,750.00
Repairs
157.44
75.00
Taxes
434.79
485.39
Depreciation
725.00
725.00
Ins., misc.
63.75
164.00
Total Deductions
5,130.98
8,199.39
Net Loss
($ 485.98)
($ 819.39)
*162 1955
1956
Gross Income
Rents
$7,380.00
$7,380.00
Deductions
Remittances to beneficiaries
$6,900.00
$6,750.00
Repairs
153.50
Taxes
486.22
448.05
Depreciation
725.00
725.00
Ins., misc.
Total Deductions
8,111.22
8,076.55
Net Loss
($ 731.22)
* ($ 896.55)
The respondent determined deficiencies in income taxes for the years 1954, 1955 and 1956 in the respective amounts of $1,779.18, $1,850.63 and $1,756.03 upon the ground that no deduction from gross income for remittances or distribution to trust beneficiaries, who were also petitioner's controlling stockholders, was allowable. The notice of deficiency expresses a determination that petitioner is an association taxable as a corporation within the purview of section 7701(a)(3), I.R.C. 1954. Opinion There are present such elements of confusion that a few words may be helpful in an attempt to isolate and expose the true issues. Three men were stockholders of a corporation about to be liquidated. They formed petitioner as a legally *163 organized corporation and "caused" to be conveyed to it certain real property to which they would succeed as transferees of the liquidating corporation. Simultaneously, they and petitioner executed a "Trust Agreement" under which petitioner by the conveyance acquired the bare legal title and, after performance of specified duties of preservation of the property and collection of rents, was to distribute to the trust beneficiaries the net income from the property. As the trustee of an express trust, petitioner claims the right to deduct from its receipts the full amount of the net income which it "distributed currently" to the beneficiaries. In the notice of deficiency, respondent determined that petitioner itself, not the trust, was an "association" taxable as a corporation within the meaning [1] of section 7701(a)(3), I.R.C. 1954. Since petitioner was created and exists as a legal corporation, this was a patent absurdity, and respondent now "agrees with petitioner that it is a duly organized corporation rather than an association of individuals taxable as a corporation." His brief states: "Respondent views petitioner as a corporation in fact and law, rather *164 than an association of individuals." He presently takes the position that, "[absent] any legal obligation under trust or otherwise to remit gross income from its activities, petitioner is responsible for corporate income tax on the entire fruits of its business * * *. [2] This then becomes the true issue, and arguments such as that made by petitioner that "Caswal Corporation [petitioner itself] was a trust and not an association" seem wide of the mark. Apparently respondent's basis for assuming there was no valid trust here, pursuant to which petitioner was obliged to distribute the income collected as trustee *165 to the beneficiaries, is that the real property was conveyed to petitioner by the liquidating corporation and not by it to the stockholders and by them to petitioner. [3] He seems to argue from this that petitioner was already the owner of the property when it set up the trust [4] and that the liquidating corporation received petitioner's stock in exchange for the property and distributed petitioner's stock to the stockholders as part of the liquidation. [5]
These then appear to be the issues: Was there a valid trust agreement; and did petitioner in its own right, and not as trustee, engage in business? We think both must be decided *166 contrary to respondent's contentions. We have found as facts, at respondent's request, that dissolution of the old corporation was formally provided for by written resolution on May 27, 1953, to become effective May 31; that the resolution provided that the meat-pie business, with which we are not presently concerned, was to be transferred to a new partnership; and that the real property in question was to be conveyed to petitioner, specifically as trustee, with express reference to a trust agreement. The following day, May 28, one of the parcels of property was conveyed, and on the next day, May 29, the other was deeded, to petitioner. While neither deed contained any reference to a trust, an agreement was executed on the latter date, when for the first time petitioner's articles of incorporation were formally executed, providing that petitioner, as trustee, would hold the property, meticulously described as in the deeds, in trust for the three principal stockholders of the liquidating corporation (arrangements having in the meantime been made to buy out the other two nominal owners). While the efficacy and validity of these steps may involve local law, we have been referred to *167 no state authority indicating that the various actions described did not accomplish what was intended; and the intention to have petitioner act only as trustee and to secure no income as its own, except possibly a trustee's fee, is too clear to permit of any debate. In the absence of persuasive local precedent, we think the tax should be predicated on what was intended and thereupon done by the parties, even though several days and a number of steps may have been required for the purpose. Cf. Minnesota Tea Co. v. Helvering, 302 U.S. 609. We need not say here, as was necessary in State-Adams Corporation, 32 T.C. 365, that the separate entity of petitioner is to be disregarded. Cf. Palcar Real Estate Co. v. Commissioner, (C.A. 8) 131 F. 2d 210, affirming a Memorandum Opinion of this Court; United States v. Brager Building & Land Corporation, (C.A. 4) 124 F. 2d 349. We shall assume that it was an existing and functioning corporation which was operated for the purpose of acting as fiduciary. As such, its existence separate from that of stockholders or trust beneficiaries is to be respected. But neither do we feel free to disregard *168 the trust instrument or its effect upon the relationship of the parties. Our conclusion must be that there was a valid trust, that petitioner was required under it to turn over the entire net income, [6] and that it was thereupon entitled to deduct from the receipts the amounts so required to be paid currently to the beneficiaries. That petitioner did not actually engage in any business in its own right also seems clear. The mere collection and transmittal of the rents, with such incidental activities as negotiating with tenants and keeping the property in repair, do not on this record justify dignifying petitioner's operations as engaging in business, any more than would have been the case if an unrelated corporate fiduciary had done the same. Cf. Flint v. Stone Tracy Co., 220 U.S. 107, 171, with McCoach v. Minehill Railway Co., 228 U.S. 295. Petitioner's business, if any, was acting as fiduciary, not owning and operating an enterprise. Whether the trust itself, operating through petitioner as trustee, was conducting *169 a business, we need not here determine. In that event, the appropriate taxpayer and the organization which as an association would have been liable for a tax similar to a corporation would be the trust and not petitioner who was merely the trustee. What occurred in Germantown Trust Co. v. Commissioner, 309 U.S. 304, affords a helpful illustration. There, Germantown Trust Company litigated the liability as "trustee Germantown Trust Company Bond Investment Fund" (106 F. 2d 139) and not in its own corporate capacity; and "the recommendation of a treasury agent [was] that the fund be taxed as a corporation." (309 U.S. 305.) Thus, if we assume that what petitioner did as trustee in collecting the rents and otherwise maintaining the property reached the stature of carrying on a business, the business must have been the one conducted as trustee for the benefit of the beneficiaries who would then have been the "associates" envisioned in Morrissey v. Commissioner, 296 U.S. 344. No determination of any deficiency against the trust itself as an association has apparently been made and that entity is not before us. We accordingly find it *170 unnecessary to decide whether such activities as were required to operate the trust should be held to constitute the conduct of a business. Failure to file returns correctly may have been a ground for the imposition of additions to tax. But cf. Germantown Trust Co. v. Commissioner, supra. But respondent makes no such claim, and the filing of a corporate, instead of a fiduciary return and reporting distributions in excess of net income, while incorrect, seem to us evidence at most of ignorance and perhaps of harmless negligence rather than of a lack of bona fides in the actions actually shown to have taken place. Decision will be entered for the petitioner. Footnotes
*. Sister of Leonard H. Carr. ↩
**. The corporation's accountant since 1929.↩
*. Due to mathematical error in the return, net loss for 1956 should be $696.55.↩
1. SEC. 7701. DEFINITIONS. (a) When used in this title, where not otherwise distinctly expressed or manifestly incompatible with the intent thereof - * * *
(3) Corporation. - The term "corporation" includes associations, joint-stock companies, and insurance companies. ↩
2. Respondent states at another point, for example, that "[the] Court's ultimate determination * * * will require consideration of the record and a finding that the corporation [petitioner] was intended to have some substantial business function or that petitioner actually engaged in business."↩
3. "It is respondent's position that upon the failure of Smith, Carr and Wallace, individually, to take title to the subject real estate and then convey it upon trust to petitioner, they failed to establish a bona fide trust." (Respondent's brief.) ↩
4. Nevertheless, he also says "liquidation of the corporation would also place title to the valuable real estate in their [the stockholders'] hands." ↩
5. He concedes as a factual matter, however, that petitioner's stock was issued directly to the three stockholders and not to the liquidating corporation.↩
6. While petitioner could have retained $100 as its trustee's fee, respondent appears to make no issue with respect to this amount.↩