PAUL S. WALDEN AND MARIE C. WALDEN, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 32291-84.        Filed May 10, 1988.

*John H. Birkeland* and *Neil M. Goff,* for the petitioners.
*Michael J. Cooper,* for the respondent.

JACOBS, *Judge:* Respondent determined a deficiency in petitioners' 1979 Federal income taxes in the amount of $54,469 and an addition to tax pursuant to section 6651(a)(1)[1] in the amount of $13,145.25. The issue presented for decision is whether the period for assessing the deficiency against petitioners expired prior to the date of issuance of the notice of deficiency.[2]

### FINDINGS OF FACT

Petitioners, husband and wife, resided in Wheatridge, Colorado, during the year in issue and at the time the petition in this case was filed.

Petitioner Paul S. Walden (Walden) controlled several companies (the Paul Walden Cos.) which were primarily engaged in home building. He engaged Kent Davis (Davis),[3] a certified public accountant and financial consultant, to prepare his and his wife's 1979 Federal and Colorado State income tax returns.

On January 10, 1980, Davis completed preliminary tax projections for petitioners' 1979 returns which reflected a balance of $24,197 due the Federal Government and an unspecified amount due the State of Colorado.

On April 14, 1980, Davis prepared and signed a Form 4868 "Application for Automatic Extension of Time to File U.S. Individual Income Tax Return" with respect to the filing of petitioners' 1979 Federal return. The filing of Form 4868 provided an automatic 2-month extension of time to June 15, 1980, for the filing of the Federal return. After completing the extension form, Davis delivered it to Walden. Walden, who had previously received a bank loan to finance the $24,197 tax balance, attached a check for such amount to the form and sent both to the Internal Revenue Service Center in Ogden, Utah. Such items were received on April 15, 1980.

---

[1]All section references are to the Internal Revenue Code of 1954 as amended and in effect during the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

[2]Pursuant to Rule 151(b), the procedural issue involved herein was severed from the substantive issue involving petitioners' entitlement to their claimed distributive share of deductions of Virginia Partners, Ltd.

[3]From 1974 to 1977, Davis was involved in the preparation of petitioners' tax returns as an employee of an accounting firm engaged to perform financial and accounting services for Walden and his companies.

Davis worked on petitioners' 1979 tax returns on various dates in April and May of 1980. At some time between June 9 and June 11, 1980, he delivered the completed returns to Steven Miller (Miller), the controller of the Paul Walden Cos.,[4] together with a preaddressed, printed Internal Revenue Service envelope and a note instructing Miller to have petitioners sign the returns and file them by June 15. The Federal return reflected an overpayment of $1,888, which was to be applied to petitioners' 1980 tax liability.

Miller gave petitioners' 1979 tax returns to Walden on Thursday, June 12, 1980. That night, Walden took the Federal and State returns home for his wife's signature. After obtaining her signature on both returns, Walden signed the returns and gave them to Miller the next day with instructions to be sure that they were timely filed before June 15, 1980. After checking that both returns were properly signed and dated, Miller placed each return in a separate envelope. The Federal return was placed in an envelope preaddressed to the Internal Revenue Service in Ogden, Utah, and the Colorado State income tax return was placed in an envelope preaddressed to the Colorado Department of Revenue. Miller then sealed the envelopes, weighed them, and used the companies' postage meter to affix the correct amount of postage thereto.

On the afternoon of Friday, June 13, 1980, after stopping at the bank, Miller went to the post office to mail the returns.[5] Rather than dropping the envelopes containing the returns in a mail slot, Miller waited in line to ensure that sufficient postage was affixed to each envelope. When he reached the front of the line, he requested the clerk to weigh the envelopes to ensure that the postage was sufficient. After the clerk weighed the envelopes and informed him that the postage was sufficient, Miller left the post office. As Miller turned to leave, he noticed the clerk had the envelopes in his hand. Neither the Federal nor the Colorado State income tax return was sent by registered or certified mail.

---

[4]Miller served as controller of the Paul Walden Cos. from approximately April, 1979 until March, 1981.

[5]Miller remembered, in minute detail, the circumstances of his mailing the 1979 returns on the afternoon of June 13, 1980. He specifically remembered leaving the company offices for the purpose of making a bank deposit as well as going to the post office.

On February 13, 1981, respondent sent petitioners a form letter stating that petitioners' 1979 Federal income tax return had not been received. Upon receiving this letter, Davis filled in the information requested and noted that the 1979 return was filed on June 14, 1980.[6] Thereafter, he forwarded the letter to Walden for his signature; Walden signed it and requested that one of his employees mail it to respondent.

On June 9, 1981, respondent mailed petitioners a second letter requesting information about their 1979 tax return. At Davis' direction, Walden attached an unsigned copy of the 1979 return to respondent's letter (although it did not expressly request that a copy of the return be provided), signed the letter, and sent both the letter and unsigned copy of the 1979 return to respondent, along with a note in which Davis stated that the return had originally been filed on June 14, 1980. Respondent received the unsigned copy of the return on June 26, 1981.

On August 14, 1981, respondent sent another letter to petitioners requesting that they sign a declaration stating that the unsigned copy of the 1979 return was their 1979 return. The letter further requested a copy of petitioners' W-2 statement. Davis forwarded the August 14 letter to Walden with a note instructing him to sign and return the declaration to respondent. Walden signed the declaration and sent it, together with a copy of his W-2 statement, to respondent.

In March 1982, the Colorado Department of Revenue notified petitioners that they did not receive petitioners' 1979 Colorado income tax return. Thereafter, petitioners sent the Colorado Department of Revenue a copy of their 1979 Colorado income tax return.

On June 15, 1984, respondent mailed a notice of deficiency to petitioners with respect to their 1979 taxable year in which he determined a deficiency in tax and an addition to tax pursuant to section 6651(a)(1). Petitioners assert that the assessment of deficiency and addition to tax are time-barred. Respondent contends that because petitioners'

---

[6]June 14, 1980, was a Saturday, and we note that branch post offices in the Denver area were closed on Saturdays. Davis testified that he used the June 14 date because he was unsure of the date of the mailing of the return and that June 14 was within a day or two of the exact mailing date.

1979 return was not received until June 26, 1981, the notice of deficiency was timely sent.

## ULTIMATE FINDING OF FACT

Petitioners' 1979 Federal income tax return was lost by the U.S. Postal Service prior to delivery to the Internal Revenue Service (IRS).

## OPINION

We must herein decide, for purposes of the statute of limitations on the assessment of tax, which party, i.e., the taxpayer or the Government, must bear the risk of nondelivery when a tax return, which is not sent by registered or certified mail, is lost by the U.S. Postal Service. For the reasons set forth below, we hold that such risk must be borne by the taxpayer.

In general, section 6501(a) imposes a 3-year limitation on the assessment of tax, beginning with the date the return was filed. Although section 6501 does not define the word "filed," this and other courts have held that, for purposes of determining the commencement of the period of limitations for assessment of tax, "filed" is synonymous with delivery to, and receipt by, the IRS. *First Charter Financial Corp. v. United States*, 669 F.2d 1342, 1345-1347 (9th Cir. 1982); *Phinney v. Bank of the Southwest National Association, Houston*, 335 F.2d 266 (5th Cir. 1964); *Pace Oil Co. v. Commissioner*, 73 T.C. 249 (1979); *Hotel Equities Corp. v. Commissioner*, 65 T.C. 528, 531 (1975), affd. 546 F.2d 725 (7th Cir. 1976); *Carnahan v. United States*, 532 F. Supp. 603 (S.D. Ind. 1981).

Petitioners argue that because their 1979 Federal income tax return was deposited in the U.S. mail on June 13, 1980, in a properly addressed envelope with the proper prepaid postage affixed, there is a strong presumption that their 1979 Federal income tax return was delivered to, and received by, the IRS in due course. Petitioners cite *Crude Oil Corp. of America v. Commissioner*, 161 F.2d 809 (10th Cir. 1947), revg. 6 T.C. 648 (1946), for their position. The flaw in petitioners' argument is that the presumption of delivery is rebuttable and the facts of this case (i.e., the return posted

on June 13, 1980, was lost in the mail and was never delivered to, or received by, the IRS) refute such presumption.

Section 7502(a), which is a remedial provision, provides that when a return is *delivered* by U.S. mail to the IRS office to which such return is required to be filed after the date prescribed for its filing, the date of the U.S. postmark stamped on the envelope in which the return is mailed is deemed to be the date the return is delivered to the IRS. In this case, petitioners cannot avail themselves of this remedial provision because the return posted on June 13, 1980, was never delivered to the IRS. See sec. 301.7502-1(d)(1), Proced. & Admin. Regs.

To enable the taxpayer to avoid the risk of his return not being delivered to the IRS, section 7502(c) provides that if a return is sent by U.S. registered or certified mail, the registration or certification is prima facie evidence that the return was delivered to the IRS office to which addressed. See sec. 301.7502-1(d)(1), Proced. & Admin. Regs. In this case, petitioners did not mail their 1979 Federal income tax return by registered or certified mail; therefore, they must assume the risk of nondelivery of their return to the IRS. See sec. 301.7502-1(c)(2), Proced. & Admin. Regs. We note that if petitioners' theory that the mere mailing of a return constitutes delivery to the IRS were correct, the need for section 7502(c) would be obviated.

Fortunately, tax returns rarely are lost in the mail. Nevertheless, when such does occur, a taxpayer cannot presume the timely filing of his return unless it was sent by registered or certified mail. Because petitioners' 1979 Federal income tax return was filed no earlier than August 1981,[7] respondent's notice of deficiency was timely issued.

We conclude this opinion by noting the admonishment of the Supreme Court: "Statute of limitations sought to be applied to bar rights of the government must receive a

---

[7]To constitute a valid return, the return must be signed. Sec. 6061; *Doll v. Commissioner*, 358 F.2d 713 (3d Cir. 1966), affg. per curiam a Memorandum Opinion of this Court; sec. 1.6061-1(a), Income Tax Regs. The filing of an unsigned return is not the filing of a return and does not commence the running of the statute of limitations against respondent. *Richardson v. Commissioner*, 72 T.C. 818, 823 (1979). Thus, in this case, the statute of limitations did not commence until respondent received the signed declaration from petitioners.

strict construction in favor of the government." *DuPont de Nemours & Co. v. Davis*, 264 U.S. 456, 462 (1924).

*An appropriate order will be issued.*