ESTATE OF LEONARD A. WOOD, DECEASED, J.M. LOONAN, PERSONAL REPRESENTATIVE, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 48020-86.     Filed April 12, 1989.

*Michael D. Johnson,* for the petitioner.
*Gail K. Gibson,* for the respondent.

WILLIAMS, *Judge:* The Commissioner determined a deficiency in petitioner's 1981 Federal estate tax of $38,636.54. The issue we must decide is whether petitioner timely elected special use valuation pursuant to section 2032A(d).[1]

### FINDINGS OF FACT

Some of the facts have been stipulated and are so found. Decedent Leonard A. Wood, a Minnesota resident, died on June 21, 1981, owning farmland valued pursuant to section 2032A at $173,334. At the time the petition was filed in this case, petitioner's personal representative, J.M. Loonan, resided in Easton, Minnesota. A Federal estate tax return was prepared by Mr. Loonan electing the special use valuation and showing no tax due.

The return was due on Monday, March 22, 1982. Mr. Loonan personally brought the return and petitioner's Minnesota estate tax return to the Easton Post Office on Friday, March 19, 1982. The Federal estate tax return, properly electing the special use valuation, and the Minnesota estate tax return were mailed in separate envelopes which were properly addressed to the Internal Revenue Service (IRS) at Ogden, Utah, and Commissioner of Revenue, St. Paul, Minnesota, respectively. The envelopes also had marked on them the address of the law offices of Mr. Loonan as a return address.

At the Post Office, Mr. Loonan handed the envelopes to Ms. Marvel Staloch, the Postmistress of the Easton Post Office. She weighed the envelopes, affixed the proper first class postage to them, canceled the stamps, postmarked the envelopes and placed them in separate bags in the outgoing mail. Both envelopes were postmarked "March 19, 1982." While she was doing this, Loonan mentioned to Marvel Staloch that the envelope containing the Federal return had to go out that day. Petitioner's Federal estate tax return properly electing special use valuation was mailed on March 19, 1982, by first class mail.

---

[1]All section references are to the Internal Revenue Code of 1954 as in effect at the date of decedent's death or for the years in issue, unless otherwise indicated.

Easton is a small community, and Ms. Staloch personally knows the residents. No resident complained to Ms. Staloch about lost mail, and Ms. Staloch, who would have been informed of such a loss, was unaware of any lost mail that was posted at the time the estate tax return was mailed.

Michael D. Johnson, attorney for petitioner, corresponded with respondent and inquired several times about the status of the estate tax return mailed for petitioner and asked for tax clearance. Respondent claimed he had not received the return. Petitioner then filed an executed copy of petitioner's original return. Respondent received this copy at the Internal Revenue Service Center at Ogden, Utah, on October 2, 1984. Petitioner also remailed the Minnesota estate tax return after being told that the State tax commissioner had not received the State return.

## OPINION

Respondent claims that the only return filed by petitioner was an untimely, executed copy. Respondent urges that because the executed copy was untimely filed, petitioner did not elect special use valuation. Sec. 20.2032A-8(a)(3), Estate Tax Regs. Accordingly, respondent determined the value of decedent's farmland to be $321,840 instead of $173,334 as stated on the return resulting in the deficiency in petitioner's Federal estate tax which is at issue. The parties do not dispute the value of decedent's property. If special use valuation has been properly elected, petitioner is entitled to value its property at $173,334; if the property should be valued at its fair market value, its value was $321,840.

The issue that we must decide is whether petitioner's estate tax return was filed on or before March 22, 1982. Respondent argues that the return mailed on March 19, 1982, was not delivered to respondent. A timely mailed return is deemed to be timely filed only if the return is delivered to respondent. Sec. 7502(a).

Section 7502(a)(1) provides that if a return is *delivered* by the United States mail to the Internal Revenue office where the return is required to be filed after the date prescribed for its filing, the date of the U.S. postmark stamped on the envelope in which the return is mailed is deemed to be the date the return is filed.

Section 7502(a)(2) provides:

(2) MAILING REQUIREMENTS.—This subsection shall apply only if—
(A) the postmark date falls within the prescribed period on or before the prescribed date—
  (i) for the filing (including any extension granted for such filing) of the return * * *
    * * * and
(B) the return * * * was, within the time prescribed in subparagraph (A), deposited in the mail in the United States in an envelope or other appropriate wrapper, postage prepaid, properly addressed to the agency, officer, or office with which the return * * * is required to be filed.

Proof of mailing the return—i.e., proof of placing in the U.S. mail an envelope containing the return and having the proper postage and address—satisfies the requirements of section 7502(a)(2)(B) but fails to satisfy the requirement of section 7502(a)(2)(A) that the properly mailed envelope be postmarked prior to the due date of the return. Consequently, the relief afforded by section 7502 is not available to a taxpayer who cannot establish the postmark on the envelope. See, e.g., *Deutsch v. Commissioner*, 599 F.2d 44 (2d Cir. 1979). For section 7502(a)(1) to apply, section 7502(a)(2) requires a postmark.

Petitioner has satisfied the requirements of both section 7502(a)(2)(A) and section 7502(a)(2)(B), and therefore, section 7502(a)(1) is applicable to this case. There appears to be no bar to petitioner's proof of the March 19, 1982, postmark. Cf. *Sylvan v. Commissioner*, 65 T.C. 548 (1975) (proof of mailing together with time of delivery established timely postmark). While the statute precludes evidence to *contradict* a U.S. postmark, *Shipley v. Commissioner*, 572 F.2d 212, 214 (9th Cir. 1977), any direct proof of the date of the postmark may be offered. Marvel Staloch, the Postmistress of the Easton Post Office, postmarked the envelope containing petitioner's return "March 19, 1982." Ms. Staloch's testimony was as credible as physical evidence of the postmarked envelope. The date of the postmark falls within the prescribed period for filing petitioner's estate tax return. This envelope was deposited in the U.S. mail, postage prepaid, and properly addressed to the Internal Revenue Service office in Ogden, Utah. Therefore, section 7502(a)(1) applies in this case.

If petitioner's return was delivered to the Internal Revenue Service office, petitioner's estate tax return will be deemed to have been timely filed pursuant to section 7502(a)(1). Sec. 301.7502-1(d)(1), Proced. & Admin. Regs. The heart of this case is, therefore, the evidence offered on the question of whether the return was delivered to respondent.

Respondent points to the rule of section 7502(c) that receipt for a return sent by U.S. registered or certified mail is prima facie evidence that the return was delivered to the Internal Revenue Service office to which it was addressed. No one argues that section 7502(c) applies to this case, but respondent argues that section 7502(c) is the *exclusive* means of proving delivery.

Respondent relies on our opinion in *Walden v. Commissioner*, 90 T.C. 947 (1988), to argue that only a receipt for registered or certified mail can prove delivery. His reliance is misplaced. In *Walden*, the taxpayers deposited their Federal income tax return in the U.S. mail and did not mail the return by registered or certified mail. The taxpayer in *Walden* could not prove the date of the postmark on the envelope, and the evidence showed that the return was not received by respondent. Specifically, the return was lost by the U.S. Postal Service prior to delivery to the Internal Revenue Service. This loss was the "risk of nondelivery" assumed by the taxpayer. *Walden* does not support the proposition that delivery can be proven only by a receipt for registered or certified mail.

It is important to note that respondent's regulations articulate the risk that a taxpayer takes when mailing a return by first class mail instead of by certified or registered mail. Section 301.7502-1(c)(2), Proced. & Admin. Regs., explains the taxpayer's risk as "the risk that the document will not be postmarked on the day that it is deposited in the mail" and provides that this risk "may be overcome by the use of registered mail or certified mail." In the case before us, this risk was eliminated when petitioner's return was postmarked within the time prescribed for filing the return. The regulations do not, and could not, state that a taxpayer who mails by first class mail cannot offer proof against respondent's claim that the envelope was not received. The prima facie evidence rule of section 7502(c)

appears to be a "safe harbor" within section 7502. In other words, if taxpayers mail by registered or certified mail, they are assured of having prima facie evidence of delivery by presenting the postmarked receipt. The provision for congressionally sanctioned, assured method of proof, however, does not in law or logic forbid any other method unless Congress expressed intent to exclude other methods. No such expression exists. There is no language in section 7502 or its legislative history to suggest that Congress intended section 7502(c) to be the only way to prove delivery. We believe that Congress gave special status to registered or certified mail because of the indisputable proof of the date of the postmark on the receipt. H. Rept. 1337, 83d Cong. 2d Sess. A434 - A435 (1954); *Shipley v. Commissioner*, 572 F.2d 212, 214 (9th Cir. 1977), affg. a Memorandum Opinion of this Court. In this case, petitioner has proven the postmark as surely as if a receipt for certified or registered mail had been offered.

Marvel Staloch testified that there were no complaints from anyone that the mail dispatched at the same time as petitioner's return was not delivered and that if the mail had been lost, she would have been informed. Unlike *Walden v. Commissioner, supra,* there is no evidence in this case that the U.S. Postal Service lost the envelope.[2]

Since 1884, the rule has been well-settled, *Rosenthal v. Walker,* 111 U.S. 185, 193 (1884), that, absent contrary proof of irregularity, proof of a properly mailed document creates a presumption that the document was delivered and was *"actually* received by the person to whom it was addressed." *Hagner v. United States,* 285 U.S. 427, 430 (1932) (emphasis added); *Legille v. Dann,* 544 F.2d 1, 4-5 (D.C. Cir. 1976); See also *United States Fire Insurance Co. v. Producciones Padosa, Inc.,* 835 F.2d 950, 952 (1st Cir. 1987); *Lepkowski v. United States Department of Treasury,* 804 F.2d 1310, 1323 (D.C. Cir. 1986); *In re Yoder Co.,* 758 F.2d 1114, 1118 (6th Cir. 1985); *Merkel v. Continental Resources Co.,* 758 F.2d 811, 817 (2d Cir. 1985); *Federal Deposit Insurance Corp. v. Schaffer,* 731 F.2d 1134, 1137

---

[2]The State return was mailed in a separate mail pouch, and counsel's understanding that it was not delivered does not bear on whether the Postal Service lost the Federal estate tax return.

(4th Cir. 1984); *Sutherland v. ITT Continental Baking Co.,* 710 F.2d 473, 475 (8th Cir. 1983); *In re Carter,* 511 F.2d 1203 (9th Cir. 1975); *Simpson v. Jefferson Standard Life Insurance Co.,* 465 F.2d 1320, 1323 (6th Cir. 1972); *United States v. Bowen,* 414 F.2d 1268, 1277 (3d Cir. 1969); *Charlson Realty Co. v. United States,* 181 Ct. Cl. 262, 384 F.2d 434, 442 (1967); *United States v. Goodman,* 285 F.2d 378 (5th Cir. 1960), cert. denied 366 U.S. 930 (1961); *Crude Oil Corporation of America v. Commissioner,* 161 F.2d 809 (10th Cir. 1947); *Columbian National Life Insurance Co. v. Rodgers,* 93 F.2d 740, 742 (10th Cir. 1937); *United States v. Guest,* 74 F.2d 730, 731 (2d Cir. 1935), cert. denied 295 U.S. 742 (1935); *Haag v. Commissioner,* 59 F.2d 516, 517 (7th Cir. 1932), affg. 19 B.T.A. 982 (1930); *General Motors Acceptance Corp. v. American Ins. Co.,* 50 F.2d 803 (5th Cir. 1931), cert. denied 284 U.S. 676 (1931); *Battaglia v. Heckler,* 643 F. Supp. 558, 560 (S.D.N.Y. 1986); *Reiman & Co. v. Eromanga Investments, N.V.,* 622 F. Supp. 13 (D.D.C. 1985). Neither section 7502 nor its legislative history indicates that Congress intended that this common law presumption of delivery which pervades the law today should not apply in section 7502 cases. Without explicit congressional statements rejecting the applicability of such a well-settled principle, we will not import into the statute such a rejection. Certainly *Walden v. Commissioner* does not purport to reject the presumption of delivery. Indeed, we acknowledged the presumption of delivery in *Walden,* holding that respondent had rebutted the presumption. *Walden v. Commissioner,* 90 T.C. at 951-952. Moreover, this Court has applied the presumption of delivery in holding that a corporation had elected Subchapter S status. *Mitchell Offset Plate Service, Inc. v. Commissioner,* 53 T.C. 235 (1969).

*Miller v. United States,* 784 F.2d 728 (6th Cir. 1986), rejected the common law presumption of delivery for cases to which section 7502 does not apply. In *Miller,* although section 7502 was inapplicable to his case (no postmark was proven), the taxpayer invoked the presumption that material mailed is material received, offering the affidavit of his attorney to show timely mailing. The court rejected this argument and held that section 7502 provides the only

exception to the rule that physical delivery constitutes filing.

The presumption of delivery and the applicability of section 7502, however, are distinct issues. The rules of section 7502 are wholly compatible with a presumption of delivery. Normally a document is filed when it is delivered. *United States v. Lombardo,* 241 U.S. 73, 76 (1916). Applying the presumption of delivery does not accelerate the filing (delivery) date. The presumption works as an evidentiary tool in determining that a properly posted, addressed and mailed envelope is delivered. Section 7502, on the other hand, changes the filing date from delivery to date of mailing. Section 7502 applies not simply because timely mailing is proven (section 7502(a)(2)(B)) but also because a timely postmark is proven (section 7502(a)(2)(A)). The question of delivery is distinct from the question of whether timely mailing is timely filing. We need not decide whether to follow *Miller,* however, because section 7502 applies to this case in which a timely U.S. postmark has been proven on a properly addressed, postage prepaid envelope.

Respondent called no witnesses and offered no records to show that the return was not received by him. Compare *Mitchell Offset Plate Service, Inc. v. Commissioner,* 53 T.C. at 240. His claim that he did not receive the return is, in short, not supported in this record by any positive evidence. The evidence supporting respondent's position is that petitioner had to remail the Minnesota estate tax return to the State Commissioner of Revenue just as it had to remail the Federal estate tax return to respondent. Just as respondent failed to present evidence of his records, he failed to present evidence of Minnesota's records. The only evidence in the record on this point was petitioner's counsel's understanding that the State taxing authority had not received the State return. In this case the testimony of Ms. Staloch overcomes any adverse inference from this coincidence. There is no justification for disregarding the presumption of regularity in the delivery of U.S. mail in the absence of contradictory evidence. In *Walden v. Commissioner, supra,* the presumption of delivery of a properly mailed return was rebutted by proof that the U.S. Postal Service had lost the

envelope. *Walden v. Commissioner, supra* at 951-952. Such evidence is lacking in this case.

Respondent made no effort in this case to rebut the presumption that a properly mailed envelope is delivered in the due course of the mails; he failed to offer any evidence of his own records or record-keeping procedures to support his claim that he did not receive petitioner's return. Compare *Miller v. United States,* 784 F.2d at 730 ("where IRS records established that no claim for refund was ever received"). We hold, therefore, that the timely postmarked envelope containing petitioner's return was delivered to respondent at his office in Ogden, Utah. Pursuant to section 7502(a), therefore, the date of the postmark on the envelope, i.e., March 19, 1982, is the date the return is deemed to have been mailed.

Like *Miller v. United States, supra; Deutsch v. Commissioner,* 599 F.2d 44, 46 (2d Cir. 1979), cert. denied 444 U.S. 1015 (1980), is inapposite to this case. Despite section 7502 not applying to his case because he could not prove the date of the postmark, the taxpayer in *Deutsch* argued that he could prove the delivery and timeliness of his petition to this court without section 7502, e.g., by submitting the affidavit of his agent who claimed he had mailed the petition within the time required. The Court held that where section 7502 is inapplicable, the actual date of mailing may not be proved by testimony or other evidence. Moreover, without the benefit of section 7502, the date of mailing would be irrelevant because filing is complete only at the time the document would normally be delivered which would, usually in such cases (but see, *Miller v. United States, supra,*) be subsequent to the due date. *United States v. Lombardo,* 241 U.S. 73, 76 (1916). In both *Miller* and *Deutsch* the evidence showed nondelivery or nonreceipt by respondent. The evidence in this case does not make that showing. We hold petitioner's proof entitles it to the timely mailing-timely filing relief of section 7502(a).

Petitioner timely filed its Federal estate tax return on March 19, 1982, and is entitled to special use valuation. There is no deficiency in petitioner's estate tax.

*Decision will be entered for the petitioner.*

Reviewed by the Court.

CHABOT, SWIFT, WRIGHT, WELLS, RUWE, WHALEN, and COLVIN, *JJ.*, agree with the majority opinion.

---

COHEN, *J.*, concurring: I agree with the result in this case because of (1) the rare concurrence of events by which petitioner was able to prove to the satisfaction of the trial judge the date of the postmark without physical evidence, and (2) respondent's failure to present evidence that the return was not delivered.

HAMBLEN, JACOBS, PARR, and RUWE, *JJ.*, agree with this concurring opinion.

---

WHITAKER, *J.* dissenting: Because I believe that the presumption of delivery upon proof of first class mailing cannot be used to supply the delivery requirement of section 7502, I dissent.

Section 7502(a)(1) states that: "If any return * * * is * * * *delivered* by United States mail to the agency * * * ." (Emphasis added.) Likewise, section 301.7502-1(d)(1) provides that: "Section 7502 is not applicable unless the document is *delivered* * * * ." (Emphasis added.) The Senate Committee report insofar as pertinent, emphasizes the Congressional intent that actual delivery is an essential requirement of section 7502. "The section [section 7502] applies in the case where documents * * * are mailed to the proper office within the time prescribed by the Internal Revenue laws, as indicated by the postmark on the envelope, and are received by that office after such time has expired. In such case, the document is deemed timely filed." S. Rept. 1622, 83d Cong., 2d Sess. 615 (1954). The majority rewrites both the statute and the regulations by effectively inserting after the word "delivered" the words "or presumed to be delivered."

In two cases we have expressly held that actual delivery to the Internal Revenue Service is required for the application of section 7502. *Benrey v. Commissioner*, T.C. Memo.

1986-135; *Foerster v. Commissioner,* T.C. Memo. 1981-32. In the only appellate court decisions which have considered this issue, the Courts of Appeal for the Second, Sixth, and Ninth Circuits have reached the same conclusion. *Miller v. Commissioner,* 784 F.2d 728 (6th Cir. 1986); *Deutsch v. Commissioner,* 599 F.2d 44 (2d Cir. 1979); *Bloch v. Commissioner,* 254 F.2d 277 (9th Cir. 1958). The majority distinguishes both *Miller* and *Deutsch* because in those two cases no postmark was proven and the evidence showed nondelivery or nonreceipt by respondent. However, those factual differences do not affect the clear holdings by the Courts of Appeal that the Court-made presumption of delivery from proof of mailing cannot be utilized to show timely delivery for purposes of section 7502. The Second Circuit in *Deutsch* stated flatly: "Further, the legislative history indicates that section 7502 is only applicable if the petition is actually delivered * * * delivery for these purposes is synonymous with receipt of the item. See 26 C.F.C. sec. 301.7502-1(d) (1978)." *Deutsch v. Commissioner, supra* at 46. There is simply no support for the majority's position in this regard.

The majority also misapplies the presumption of delivery cases. Under that presumption, the date of delivery does not relate back to the date of mailing. Rather, those cases hold that a document is deemed to be timely filed upon "proof of regular mailing, in time to reach the collector, in due course of mail, within the statutory filing period * * * ." *Crude Oil Corp. of America v. Commissioner,* 161 F.2d 809, 810 (10th Cir. 1947). In other words, not only is a taxpayer required to prove mailing, but in appropriate cases he is required to show that the document would have reached the Internal Revenue Service on or before the due date. *Wells Marine, Inc. v. Renegotiation Board,* 54 T.C. 1189 (1970). In this case, the majority has not made a finding that petitioner's return would have made its way from eastern Minnesota to respondent's service center in Odgen, Utah, in two business days, an unlikely event. The majority conveniently eliminates this issue by attaching the timing rule of section 7502(a)(1) to the pre-section 7502 presumption, contrary to the statute. See, e.g., *Walden v. Commissioner,* 90 T.C. 947, 952 (1988), where we said "if [taxpayers'] theory that the mere mailing of a return

constitutes delivery to the IRS were correct, the need for section 7502(c) would be obviated."

Finally, there is at least a serious question as to whether the presumption of delivery has not been rebutted in this case by facts found by the majority. Petitioner or his representative was informed both by representatives of the Internal Revenue Service and of the Minnesota State Tax Commissioner that neither the Federal Estate Tax Return nor the State Estate Tax Return has been received. While more definitive proof of nondelivery would have been preferable, the presumption itself probably vanished. See, e.g., *Llorente v. Commissioner*, 74 T.C. 260, 277 (1980), Tannenwald, *J.*, concurring. As we said in *Walden v. Commissioner, supra*, the presumption of delivery is rebuttable and does not override proof of no delivery. *Walden v. Commissioner, supra* at 951-952.

Accordingly, I dissent.

NIMS, PARKER, KÖRNER and GERBER, *JJ.*, agree with this dissent.