MIDCONTINENT DRILLING ASSOCIATES, A LIMITED PARTNERSHIP, GUY FARMER, A PARTNER OTHER THAN THE TAX MATTERS PARTNER, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Midcontinent Drilling Assocs. v. Commissioner
Docket No. 6060-92
United States Tax Court
T.C. Memo 1994-119; 1994 Tax Ct. Memo LEXIS 120; 67 T.C.M. (CCH) 2453; March 23, 1994, Filed *120 Decision will be entered for respondent. Guy Farmer, pro se. [1]
For respondent: Alan S. Kline. COLVIN
COLVIN
MEMORANDUM FINDINGS OF FACT AND OPINION COLVIN, Judge: Respondent made final partnership administrative adjustments to the income of Midcontinent Drilling Associates, A Limited Partnership (MCDA), of $ 4,249,441 for 1983, $ 365,895 for 1984, and $ 1,233,201 for 1985. Guy Farmer, petitioner, was a limited partner in MCDA. We must decide the following issues: 1. Whether application of the TEFRA partnership provisions in this case violates petitioner's constitutional rights of due process or is otherwise invalid. We hold that application of these provisions to petitioner is constitutional and valid. 2. Whether the TEFRA partnership provisions do not apply to MCDA because it was a sham. We hold that *121 the TEFRA partnership provisions apply to MCDA even if it was a sham. 3. Whether MCDA engaged in activities for profit under section 183. We hold that it did not. 4. Whether MCDA may deduct amounts embezzled by the general partner as a theft loss under section 165. We hold that it may not. 5. Whether MCDA may deduct its payments for Terra-Drill sublicense fees or for interest paid on the Mitchell Petroleum Technology Corp. note. We hold that it may not. References to petitioner are to Guy Farmer. References to the partnership or to MCDA are to Midcontinent Drilling Associates. Section references are to the Internal Revenue Code in effect for the years in issue. Rule references are to the Tax Court Rules of Practice and Procedure. FINDINGS OF FACT Some of the facts have been stipulated and so found. Petitioner resided in Washington, D.C., when he filed the petition. The principal place of business of MCDA when the petition was filed was New York. MCDA is a limited partnership formed in Utah on December 4, 1980. According to its offering memorandum, MCDA was to conduct developmental drilling in Kansas and Oklahoma and exploratory drilling in the Overthrust Belt in *122 Utah, and was to acquire an exclusive sublicense to use, sell, and lease a new type of drill known as the Terra-Drill. The Terra-Drill was an open chamber rotating gun cylinder which was supposed to fracture the rock with high velocity projectiles fired through triple gun barrels ahead of the drill. No exploratory drilling was conducted by MCDA in the Overthrust Belt, few of the promised wells were drilled, and a fully operational prototype of the Terra-Drill was never developed. Petitioner was a limited partner in MCDA. He paid $ 50,000 per year during 1981, 1982, and 1983 to buy units in MCDA. The MCDA offering memorandum stated that the anticipated tax losses during the first 4 years were 300 percent of the cash invested. None of the MCDA promoters were familiar with the oil and gas business. Samuel Simon was MCDA's individual general partner and tax matters partner. In 1985, he pled guilty to embezzling a substantial amount of funds from MCDA and other partnerships while acting as their general partner and tax matters partner, and was imprisoned. In Webb v. Commissioner, T.C. Memo. 1990-556, we decided that MCDA did not have a profit objective *123 in the years preceding the years in issue here. Webb involved individual taxpayers in six related partnerships (Petro-Tech partnerships), including MCDA, for tax years 1980, 1981, and 1982. We decided that the partnerships did not have a profit objective under section 183, that the partnerships were engaged in sham transactions that lacked economic substance, and that the partners could not deduct their distributive shares of partnership losses. Id. The parties agree that MCDA did not have a profit objective for any of the years in issue. On October 2, 1986, some of the limited partners filed a class action suit in Federal District Court in Houston, Texas, alleging fraud against MCDA and other partnerships, by promoters, attorneys, accountants, and others. A jury decided that the accounting firm used by the defendants was liable for damages of $ 37,719,000 for violation of Federal securities law and common law fraud. Other defendants settled. Respondent was generally aware of the filing of pleadings and settlement of the class action suit. MCDA filed partnership tax returns for 1983, 1984, and 1985. Respondent mailed a notice of proposed adjustments to partnership *124 items to petitioner on September 20, 1988, for MCDA's 1983 tax year. Respondent mailed similar notices for 1984 and 1985 on August 1, 1989. On October 29, 1991, respondent mailed petitioner copies of respondent's notices of final partnership administrative adjustment (FPAA's) in this case for 1983, 1984, and 1985. Petitioner timely filed a petition in this case. On December 15, 1992, respondent properly mailed a request for admissions to the address in Washington, D.C., that petitioner used on the petition. Respondent filed the request for admissions with the Court on December 16, 1992. Petitioner received respondent's request for production of documents which respondent also mailed on December 15, 1992. OPINION 1. TEFRA Partnership Provisions
Petitioner invested in MCDA during the years in issue. Respondent issued the FPAA's to MCDA which are at issue here under the TEFRA partnership provisions. Secs. 6221-6233. Petitioner seeks to have the tax on the partnership items at issue here decided at the individual taxpayer level rather than the partnership level. As discussed below, he contends that this matter should not proceed under the TEFRA unified partnership *125 audit rules for a variety of reasons. A brief discussion of the TEFRA partnership provisions is in order. Congress enacted the TEFRA partnership provisions in 1982 in response to the mushrooming administrative problems experienced by the Internal Revenue Service in auditing returns of partnerships, particularly tax shelter partnerships with numerous partners. Boyd v. Commissioner, 101 T.C.     (1993); Maxwell v. Commissioner, 87 T.C. 783, 787 (1986); H. Conf. Rept. 97-760, at 600, 604 (1982), 1982-2 C.B. 600, 662, 664. The purpose of these provisions was to provide a procedure under which the Commissioner and the courts could adjust partnership items in a single, unified partnership proceeding, rather than in separate proceedings with each partner. Sec. 6221; H. Conf. Rept. 97-760, supra at 600, 604, 1982-2 C.B. at 662, 664. As we stated in an earlier case interpreting the TEFRA partnership provisions: By enacting the partnership audit and litigation procedures, Congress provided a method for uniformly adjusting items of partnership income, loss, deduction, or credit that affect *126 each partner. Congress decided that no longer would a partner's tax liability be determined uniquely but "the tax treatment of any partnership item [would] be determined at the partnership level." Sec. 6221. In drawing the line between those matters which may be the subject of a partnership proceeding and those which may not be, the statute divides disputes arising from "partnership items" from disputes arising from "nonpartnership items." * * * If the tax treatment of a "partnership item" is at issue, the statute requires the matter to be resolved at the partnership level. Sec. 6221. * * * It is evident both from the statutory pattern and from the Conference report that Congress intended administrative and judicial resolution of disputes involving partnership items to be separate from and independent of disputes involving nonpartnership items. Consequently, the portion of any deficiency attributable to a "partnership item" cannot be considered in the partner's personal case involving other matters that may affect his income tax liability. The "partnership items" must be separated from the partner's personal case and considered solely in the partnership proceeding. See sec. *127 6226(a); sec. 6226(f).
Maxwell v. Commissioner, supra at 787-788. Thus, treatment of TEFRA partnership items is decided at the partnership level rather than in separate proceedings involving individual partners. Secs. 6221, 6222, and 6223; Sente Investment Club Partnership v. Commissioner, 95 T.C. 243, 247-248 (1990); Maxwell v. Commissioner, supra at 787. 2. Petitioner's Personal Profit Objective
Petitioner argues that his due process rights would be violated if we do not consider his personal profit objective in this proceeding. At trial petitioner called two witnesses: Messrs. J. Stephen Murphy, a certified public accountant with whom petitioner spoke about MCDA; and Edward Koepenick, a commercial real estate agent and former tax shelter and investment adviser who sold the interest in MCDA to petitioner. Petitioner sought their testimony to support his claim that he had a personal profit objective for investing in MCDA. Petitioner argues that the Court erred in sustaining respondent's objection to testimony about petitioner's personal profit motive on grounds *128 of relevancy. We disagree. First, petitioner's personal profit objective is not relevant to deciding if MCDA had a profit objective. Even before the enactment of the TEFRA partnership provisions, whether or not the partnership activities were conducted for profit was decided at the partnership level. Brannen v. Commissioner, 78 T.C. 471, 502-505 (1982), affd. 722 F.2d 695 (11th Cir. 1984). Second, the items at issue here are partnership items. None of the events that could cause partnership items to become nonpartnership items has occurred. Sec. 6231(b)(1). Thus, we conclude that we properly sustained respondent's objections to testimony about petitioner's personal profit objective. 3. Validity of TEFRA Partnership Provisions as Applied to Petitioner
Petitioner argues that the TEFRA partnership provisions are unconstitutional, violate his due process rights, and are invalid on the grounds that they are inequitable. We have previously held that the TEFRA partnership provisions are constitutional. Boyd v. Commissioner, 101 T.C.     (1993) (taxpayers' allegation that the TEFRA partnership provisions *129 violate various constitutional rights rejected); 1983 Western Reserve Oil & Gas Co. v. Commissioner, 95 T.C. 51, 64 (1990) (claim of denial of due process rejected), affd. without published opinion 995 F.2d 235 (9th Cir. 1993); Saso v. Commissioner, 93 T.C. 730 (1989). Petitioner contends that his constitutional right to due process of law was violated. He relies on Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950), for the proposition that due process requires advance notice and an opportunity for hearing appropriate to the nature of the case. Petitioner asserts that the TEFRA partnership provisions allow the levy and collection of income taxes from petitioner without requiring respondent to first serve a notice of deficiency on him specifying the taxes claimed to be due or giving him the right to contest the deficiency in Court. We disagree. Petitioner's interpretation of the TEFRA partnership provisions is incorrect. Respondent was required by section 6223(a) to give notice to petitioner as a notice partner, and did so. As a result, petitioner *130 received notice of respondent's partnership adjustments. He has the opportunity to contest respondent's administrative adjustments in this case. Petitioner argues that his due process rights under the Fifth Amendment were violated and the TEFRA partnership provisions as applied here are unfair and inequitable because the general partners did not contest the FPAA's and a limited partner is ill-equipped to represent the partnership. We disagree. Petitioner had notice and opportunity to protect his interests. Respondent properly applied the TEFRA partnership provisions which were enacted in response to the enormous growth of tax shelter partnerships. See Boyd v. Commissioner, supra at     (slip op. at 6). Even before Congress enacted the TEFRA partnership provisions, individual limited partners had the burden of proving partnership deductions at the partnership level. United States v. Basye, 410 U.S. 441, 449 (1973); e.g. Brannen v. Commissioner, supra at 502 (trade or business of partnership); Goodwin v. Commissioner, 75 T.C. 424, 434-439 (1980) (loan and mortgage broker *131 fees for permanent financing to construct housing project); Madison Gas & Electric Co. v. Commissioner, 72 T.C. 521, 564-565 (1979) (startup costs), affd. 633 F.2d 512 (7th Cir. 1980). The TEFRA partnership provisions do not bar petitioner from filing amended returns to preserve his right to raise a personal theft loss theory under section 165(c)(3). See Marine v. Commissioner, 92 T.C. 958, 974 (1989) (limited partner in individual case sought theft loss deduction under section 165(a) and (c)(3)), affd. without published opinion 921 F.2d 280 (9th Cir. 1991). Upon consideration of the foregoing, we conclude that petitioner's constitutional rights to due process of law have not been violated, and that equitable principles do not bar use of the TEFRA partnership provisions in this case. 4. MCDA Is Subject to the TEFRA Partnership Provisions
Petitioner contends that the promoters and organizers formed MCDA to embezzle cash contributions from the investors. Thus, petitioner argues that MCDA was a sham and is not subject to the TEFRA partnership provisions. Petitioner *132 argues that Congress did not intend that the TEFRA partnership provisions apply to sham partnerships. Petitioner suggests no reason why the TEFRA partnership provisions, enacted in response to the proliferation of tax shelters, should not apply to sham partnerships. He did not provide any authority for his position and we know of none. Section 6233(a) provides: (a) General Rule. -- If a partnership return is filed by an entity for a taxable year but it is determined that the entity is not a partnership for such year, then, to the extent provided in regulations, the [TEFRA partnership] provisions * * * are hereby extended in respect of such year to such entity and its items and to persons holding an interest in such entity.
Under temporary regulations, the TEFRA partnership provisions apply to entities which file partnership returns. Sec. 301.6233-1T, Temporary Proced. & Admin. Regs., 52 Fed. Reg. 6781 (Mar. 5, 1987). MCDA filed a partnership return for each of those years. Therefore, MCDA is subject to the TEFRA partnership provisions. 5. MCDA Lacked a Profit Objective Under Section 183
Respondent made administrative adjustments on *133 the grounds that MCDA lacked a profit objective under section 183. We reached the same conclusion in Webb v. Commissioner, T.C. Memo. 1990-556, for the years prior to the years at issue here. Respondent's administrative adjustments are presumed to be correct, and petitioner bears the burden of proving them to be incorrect. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 112 (1933); Scarsdale Oil Associates, 1983A v. Commissioner, T.C. Memo. 1992-190, affd. without published opinion 986 F.2d 499 (2d Cir. 1992). Petitioner concedes that MCDA did not have a profit objective. Instead, petitioner offered testimony about his personal profit objective. However, as discussed above, this is a partnership proceeding, and a partnership's profit objective is decided at the partnership level. Taube v. Commissioner, 88 T.C. 464, 478 (1987). Petitioner's personal profit objective is irrelevant to the issue of MCDA's profit objective. Petitioner argues that we should reach a different conclusion in this case than in Webb v. Commissioner, supra, *134 because in Webb we did not consider that Simon embezzled money from MCDA or that the limited partners brought a class action suit. We disagree. However, these facts do not change our conclusion that MCDA lacked a profit motive. 6. Theft Loss Deduction
Petitioner contends that respondent erred in not allowing MCDA to deduct embezzlement by the general partner as a theft loss. Generally, a taxpayer may deduct losses from the theft of property in the year in which the taxpayer discovers the loss. Sec. 165(a), (e). The term "theft" includes embezzlement. Sec. 1.165-1(d)(3), Income Tax Regs. A partnership may be entitled to deduct an embezzlement loss. Marine v. Commissioner, supra at 976-977. The parties stipulated that the general partner embezzled substantial sums from the Petro-Tech partnerships, including MCDA, between 1981 and 1985. The parties also stipulated that the general partner pled guilty to embezzlement in 1985 and signed confessions of judgment in favor of MCDA and other partnerships with respect to the embezzled funds. There is no other evidence in the record about the embezzlement from MCDA. The record does not *135 show the amount that was stolen from MCDA, when it was stolen, when the theft was discovered, or if any amounts were reimbursed by Simon or any insurance carrier. MCDA claimed a $ 1,141,422 embezzlement loss as "other deductions" on its 1985 tax return. However, an amount deducted on the return is not evidence that the deduction is allowable. Consequently, petitioner has failed to carry his burden of proving that MCDA is entitled to any theft loss deduction for the years in issue. 7. Petitioner's Cash Payments to MCDA
Petitioner argues that, under section 165, he may personally deduct his personal out-of-pocket cash contributions to the partnership in the year they were made. As discussed above, this case decides issues at the partnership level and not petitioner's personal tax issues. We lack jurisdiction over any deficiencies that may result from nonpartnership items in a partnership action. Maxwell v. Commissioner, 87 T.C. at 787. 8. Terra-Drill Sublicense Fees and Interest Deduction
Respondent made administrative adjustments on the grounds that MCDA's claimed deductions for the Terra-Drill sublicense fees under section 1253(d)(2) *136 should be disallowed. A taxpayer may deduct certain amounts attributable to the transfer of a franchise. Sec. 1253(d)(2). A taxpayer claiming a deduction under section 1253(d)(2) must be engaged in a trade or business. Herrick v. Commissioner, 85 T.C. 237, 266 (1985). Merely acquiring a license to distribute a product within a territory does not place the taxpayer in the trade or business of distributing that product for purposes of section 1253(d)(2). Jackson v. Commissioner, 86 T.C. 492, 513-514 (1986), affd. 864 F.2d 1521 (10th Cir. 1989). We found that MCDA and the other partnerships were not engaged in a trade or business with respect to the Terra-Drill in Webb v. Commissioner, supra. There is no evidence here to convince us that our conclusion in Webb was wrong. Petitioner concedes that MCDA was not in the trade or business of distributing the Terra-Drill during the years in issue. Thus, we hold that petitioner may not deduct sublicensing fees for the Terra-Drill during the years in issue under section 1253(d)(2). Respondent disallowed MCDA's *137 interest deduction on the note obligations payable to Mitchell Petroleum Technology Corp. Petitioner did not provide any evidence about this issue. In Webb v. Commissioner, supra, we said: Because the partnerships' transactions were devoid of any profit objective, as we have concluded, and lacked economic substance, the deductions claimed by the accrual basis partnerships for interest on the note obligations pursuant to section 163(a) to Mitchell, which had no practical economic effect other than the creation of tax losses, must also be disallowed. Friendship Dairies, Inc. v. Commissioner, 90 T.C. 1054, 1067-1068 (1988). We are persuaded on this record that the note obligations did not reflect a genuine indebtedness from the partnerships to Mitchell. It is settled law that in order for an interest deduction to be allowable, the indebtedness must be genuine. Herrick v. Commissioner, 85 T.C. 237, 260 (1985).
Petitioner argues that Simon's embezzlement conviction and the limited partners' class action victory should lead to a result different from that reached in Webb. We *138 disagree. The conviction and class action case do not in any manner show that the note obligations reflected a genuine indebtedness from the partnerships to Mitchell. We sustain respondent's administrative adjustments on this issue. 9. Deemed Admissions
Respondent sent a request for admissions to petitioner on December 16, 1992, which, if admitted, establish facts favorable to respondent for all issues in dispute. Petitioner did not respond to the request for admissions. Generally, matters in a request for admissions are deemed admitted unless within 30 days after service of the request a written answer or objection is served and filed. Rule 90(c). Petitioner argues that he did not respond to respondent's request for admissions because he did not receive it. Therefore, he argues that it is unfair for it to be deemed admitted. Respondent contends, and we find, that the request for admissions was properly mailed under Rule 90. Evidence that a document was properly mailed creates a presumption that the document was actually received by the person to whom it was addressed. Rosenthal v. Walker, 111 U.S. 185, 193 (1884); Estate of Wood v. Commissioner, 92 T.C. 793, 798 (1989), *139 affd. 909 F.2d 1155 (8th Cir. 1990). Petitioner has presented no persuasive evidence otherwise. Thus, we find that petitioner received the request for admissions. The requested admissions are deemed admitted because he did not respond to them. Rule 90(c). However, we would reach the same result without the deemed admissions. To reflect the foregoing, Decision will be entered for respondent. Footnotes
1. The docket entries for this case show that the Clerk of the Court served all papers required to be served under Rule 21 of the Tax Court Rules of Practice and Procedure↩ to Midcontinent Drilling Associates, a limited partnership, pro se, and Oscar Strongin, tax matters partner, pro se, in addition to Guy Farmer, a partner other than the tax matters partner, pro se.