T.C. Summary Opinion 2009-49


UNITED STATES TAX COURT


KULVINDER S. BOPARAI, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 12135-07S.                    Filed March 31, 2009.


Kulvinder S. Boparai, pro se.

<u>Daniel W. Layton</u>, for respondent.



CARLUZZO, <u>Special Trial Judge</u>:  This case was heard

pursuant to the provisions of section 7463.[1]  Pursuant to section

7463(b), the decision to be entered is not reviewable by any

_____

[1]Section references are to the Internal Revenue Code of
1986, as amended, in effect for the relevant period.  Rule
references are to the Tax Court Rules of Practice and Procedure.

other court, and this opinion shall not be cited as precedent for any other case.

In a notice of deficiency dated and mailed February 20, 2007, respondent determined a deficiency in and additions to tax with respect to petitioner's 2002 Federal income tax. The parties have resolved all issues arising from adjustments made in that notice of deficiency. The issue for decision is whether this Court has jurisdiction to determine an overpayment in petitioner's 2002 Federal income tax.

Background

Some of the facts have been stipulated and are so found. At all times relevant, petitioner and Rosie K. Boparai were married to each other and lived together in California. They filed an untimely joint 2002 Federal income tax return.[2]

Petitioner's 2002 return shows that the Federal income tax liability reported on that return has been overpaid. A refund claim for that overpayment is made on that document. The parties agree that the income, deductions, credits, tax, and overpayment of tax shown on petitioner's 2002 return are correct. The overpayment of tax shown on that return is attributable entirely to income tax withheld from petitioner's (and perhaps Rosie

---

[2]Rosie K. Boparai is not a party to this case. For convenience we sometimes refer to the 2002 joint return that she made with petitioner as petitioner's return. With extensions, that return was due to be filed on or before Aug. 15, 2003.

Boparai's) wages during 2002. By law, the income tax so withheld that year is treated as having been paid on April 15, 2003. See sec. 6513(b)(1).

The manner in which petitioner's 2002 return was prepared and first mailed to the Internal Revenue Service (IRS) is best described by the following excerpts from the testimonies given by petitioner and Rosie K. Boparai at trial:

THE COURT: All right, Dr. Boparai, this whole controversy boils down to the preparation and the mailing of your 2002 return. So I'm going to ask you a couple questions about that return. Did you prepare it?

PETITIONER: Yes, Your Honor.

THE COURT: And when did you prepare it?

PETITIONER: Your Honor, on April 15, 2005.

THE COURT: All right, and you're testifying [to that date] based upon a date that's shown on the return?

PETITIONER: That's correct, Your Honor.

THE COURT: Do you have a specific recollection of the event * * *?

\* \* \* \* \* \* \*

PETITIONER: And I have a -- I make overpayments every year because I have some incomplete records. I kind of do that every year for the last three years -- last five years in a row. I know the statute of limitations. So I try to, you know -- I try to get all my information, try to make -- you know, get my returns in, but for -- for circumstances beyond my control, I am not able to do that because I don't get all the information in. So I make overpayments every year. I follow the statute of limitations, and I have done that for 1997, '98, '99, 2000, 2001, 2002, 2003.

\* \* \* \* \* \* \*

And -- and I and my wife -- we both went to the post office and returned -- signed the returns and mailed it in on the 15th.

THE COURT:  All right, so you went together to the post office?

PETITIONER:  That's correct, right before the deadline.

THE COURT:  Did you mail it by certified or registered mail?

PETITIONER:  No, because the post office was closed and they have people -- on the tax days, they have people collecting mail until midnight.

\*      \*      \*      \*      \*      \*      \*

But they don't give you a receipt

\*      \*      \*      \*      \*      \*      \*

THE COURT:  What's your recollection of the event?

ROSIE BOPARAI:  Your Honor, I drove him that particular day because he hadn't finished completing all this and he still wanted to check to make sure everything was accurate. So he asked me to drive him so that he can in the meantime still make sure everything was in order.

\*      \*      \*      \*      \*      \*      \*

THE COURT:  Do you recall what post office it was?

ROSIE BOPARAI:  It was the main post office on Pegasus Street.  It's quite a way from our place.

THE COURT:  And do you recall what time it would have been that you arrived there?

ROSIE BOPARAI:  I think it was close to -- between 11:30 and 11:45.

THE COURT:  At night?

ROSIE BOPARAI:  Night.

As it turned out, petitioner's 2002 return was not received by the IRS until May 29, 2007, after it was mailed a second time apparently in response to the notice of deficiency issued to petitioner for 2002.

Discussion

Other than as set forth on their 2002 joint return, nothing in the record suggests that petitioner or Rosie K. Boparai made any refund claim for 2002. In his petition, petitioner, in effect, requests that the Court determine an overpayment of income tax as shown on that return.

Pursuant to section 6512(b)(1), and within the limitations set forth in section 6512(b)(3), we have jurisdiction to determine the existence and amount of any overpayment of tax to be credited or refunded to the taxpayer for a year that is properly before us for the redetermination of a deficiency. If the refund claim for any year is made on a Federal income tax return filed after a notice of deficiency for that year was mailed to the taxpayer, and that notice of deficiency is not mailed within 3 years from the date that the return was due to be filed (with extensions), then our jurisdiction to determine any overpayment for that year is limited to the tax paid during the 2-year period before the date the notice of deficiency was mailed. See secs. 6511(a) and (b)(2), 6512(b)(1), (3)(B); Commissioner v. Lundy, 516 U.S. 235 (1996).

Under the circumstances, nothing more need be said with respect to our overpayment jurisdiction, or the limitations on that jurisdiction. There is no dispute between the parties with respect to the periods of limitations on refunds, or the effect that such periods have on this Court's refund jurisdiction in a deficiency case. Instead, the parties disagree over the date that petitioner's 2002 return should be considered filed. From petitioner's testimony it is clear that he understands that if his 2002 return is considered filed when received by the IRS on May 29, 2007, he would not be entitled to the refund claimed on that return. On the other hand, respondent agrees that if petitioner's return is treated as having been filed on April 15, 2005, we have jurisdiction to determine the overpayment shown on that return. See sec. 6512(b)(3)(C)(ii). Consequently, we turn our attention to the determinative fact in this case, that is, the date that petitioner's 2002 return is considered to have been filed, and note that we are presented with only two options-- April 15, 2005, the date that petitioner claims the return was mailed, or May 29, 2007, the date that the return was received by the IRS.

Generally, a document is considered filed with the IRS when the document is delivered to and received by that agency. See United States v. Lombardo, 241 U.S. 73, 76 (1916). In this case, as a result of its having been mailed a second time, respondent

received petitioner's 2002 return on May 29, 2007.  Applying the general rule, that date would be considered the date that the return was filed.

There are, however, several exceptions to the general rule applicable to documents mailed for filing to the IRS.  If the conditions set forth in section 7502(a) are satisfied, then certain documents are treated as having been received by the IRS (and therefore filed) on the date shown by the U.S. postmark stamped on the container in which the document was mailed.  That exception does not apply here because there is no evidence showing the date of a U.S. postmark, if any, that might have been placed on the envelope in which petitioner's 2002 return was first mailed.  See Anderson v. United States, 966 F.2d 487 (9th Cir. 1992).[3]  Similarly, section 7502(c), which provides that the registration of a document sent by certified or registered mail "shall be prima facie evidence that the * * * [document] was delivered to the agency * * * to which addressed" is not applicable because petitioner did not send his 2002 return by certified or registered mail.

---

[3]Pursuant to sec. 7463(b), the decision in this case is not reviewable by any other court.  But for that section, any appeal would lie with the U.S. Court of Appeals for the Ninth Circuit.  See secs. 7463(b), 7482(b)(1)(A).  Unless there are compelling reasons to do otherwise, this Court applies the law in a manner consistent with the holdings of the Court of Appeals to which an appeal of its decision would lie, Golsen v. Commissioner, 54 T.C. 742 (1970), affd. 445 F.2d 985 (10th Cir. 1971), even in cases subject to sec. 7463(b).

In addition to the section 7502 exceptions to the general rule, the "mailbox" rule established under common law provides that evidence showing that a document was properly mailed raises a rebuttable presumption that it was received by the addressee. Anderson v. United States, supra at 491. But there is insufficient evidence in this case to show any such "proper" mailing of petitioner's 2002 return on April 15, 2005. The record is silent with respect to basic information such as the address to which the document was mailed, or the amount of postage that might have been placed on the envelope in which it was mailed. Furthermore, to the extent that the evidence of mailing on April 15, 2005, does give rise to a rebuttable presumption of receipt, that presumption has been rebutted by the evidence introduced by respondent establishing that petitioner's 2002 return was not received before May 29, 2007.

Because he mailed his 2002 return in the manner in which he did on April 15, 2005, petitioner assumed the risk that the document would be lost in the mail or otherwise not delivered in due course to the IRS. See Walden v. Commissioner, 90 T.C. 947 (1988). Accordingly, we find that petitioner's 2002 return, which constitutes the only claim for refund made with respect to the overpayment shown on that return, was filed on May 29, 2007, the date that document was actually received by the IRS, rather

than April 15, 2005, the date that the return was first mailed to the IRS.

As noted above, the notice of deficiency for 2002 was mailed to petitioner on February 20, 2007, a date more than 3 years after petitioner's 2002 return was due to be filed (with extensions).  Because no claim for the refund of the overpayment of petitioner's 2002 income tax had been made as of the date the notice of deficiency for that year was mailed to him, and because that overpayment was paid more than 2 years before that notice of deficiency was mailed, we are without jurisdiction to determine any overpayment with respect to petitioner's 2002 Federal income tax.  See sec. 6512(b)(1), (3); Commissioner v. Lundy, 516 U.S. 235 (1996).

To reflect the foregoing and to give effect to the Stipulation of Settled Issues, filed March 26, 2008,

Decision will be entered under Rule 155.