## WATSON v. COMMISSIONER OF INTERNAL REVENUE.

### No. 27.

Circuit Court of Appeals, Second Circuit.

Jan. 8, 1942.

438

Ralph O. Willguss and Edmond N. Cahn, both of New York City (Neil P. Cullom, of New York City, of counsel), for petitioner.

Samuel O. Clark, Jr., Asst. Atty. Gen., and J. Louis Monarch and Michael H. Cardozo, IV., Sp. Assts. to the Atty. Gen., for respondent.

Before L. HAND, SWAN, and CHASE, Circuit Judges.

SWAN, Circuit Judge.

This case involves deficiencies resulting from the denial of deductions claimed by the petitioner in his returns for the years 1933 and 1934. He is a New York attorney who, in addition to practicing his profession, has long been interested in publishing legal periodicals and other magazines. The deductions which were denied him in the years in question relate to expenditures incurred in the publication of the magazines known respectively as the United States Law Review and the Living Age. Each of these magazines was nominally published by a corporation which the petitioner caused to be organized for that purpose in 1930 under the names respectively, of United States Review Corporation and Living Age Corporation. The former appeared as publisher of the United States Law Review in a statement carried by that magazine, and the copyright was taken in its name; similarly, the Living Age Corporation appeared as publisher of the Living Age and held the copyright of it. Each corporation had a board of directors composed of the petitioner's friends and office associates, who served without compensation, but meetings of its directors were held only when corporate action was required with respect to opening bank accounts, authorization of signatures on checks, or acquisition and disposal of property by the corporation. In general, the corporate entities were disregarded and Mr. Watson, who owned the sole beneficial interest in the issued stock, managed the business operations without consultation with the corporate officers or directors, and as if he were individually the publisher. He contracted for the printing and employed the editors; he supplied the office space. All financing was done on his personal credit; he provided the funds needed by either corporation, paying its obligations and endorsing its notes. For funds so advanced he never received any note or other evidence of indebtedness. Further details of how the business was conducted may be found in the Board's opinion in 42 B.T.A. 52. There is no dispute as to its findings of fact.

In each of the years from 1930 to 1938 the United States Review Corporation had net losses. This was likewise true of the Living Age Corporation, except in the year 1930. In his returns for 1933 and 1934 Mr. Watson sought to deduct as "bad debts" the losses incurred by him on account of the two magazines; and in addition claimed the right to carry over into his 1933 return a net loss of some $22,000 arising out of similar deductions taken in his 1932 return. Before the Board, however, and before this court, his main contention seeks to justify the deductions under section 23(e) (1) of the Revenue Acts of 1932 and 1934, 26 U.S.C.A. Int. Rev.Acts, pages 490, 672, as losses "incurred in trade or business." In the alternative, he claims them as bad debts under section 23(j) of the 1932 Act, 26 U.S.C.A. Int.Rev.Acts, page 490, and section 23(k) of the 1934 Act, 26 U.S.C.A. Int. Rev.Acts, page 673. The Board disallowed the deductions on either theory.

At the outset it should be noted that on either theory the amounts of the claimed deductions were incorrectly computed. The amounts used in the 1932 return were com-

puted by ascertaining "the liquidating value of the petitioner's interest in the corporation" and subtracting this value "from the total of previous advances" made by him to the corporation. For 1933 and 1934 the same method of computation was used, except that the total of previous deductions was subtracted in each instance. We find this method of computation and the resulting figures wholly incomprehensible. If the corporate entities are to be disregarded and the publishing business treated as the taxpayer's own, he might set off against gross income produced by the business the ordinary and necessary expenses of carrying it on. If this resulted in a debit balance, he might subtract it from his other income. But how he can treat as a loss "sustained during the taxable year" the difference between what he has put into the business and what he believes to be its "liquidating value" passes our comprehension. It would seem that his annual losses from carrying on the publishing business would be the net losses shown on the balance sheets of the corporations. For the year 1932, for example, these were $6,777.82 for the United States Review Corporation and $5,275.68 for the Living Age Corporation; yet the deductions claimed by the petitioner for that year were respectively $18,650.20 and $32,932.99. On the other hand, if the claimed deductions are to be treated as bad debts owing by the corporate entities, the computation is equally incomprehensible. The sums claimed do not correspond with the amounts set up as advances by the petitioner on the books of the respective corporations. However, the Board did not rest its decision upon the petitioner's failure to prove the correct amount of the deductions to which he might be entitled. Nor shall we.

██ To justify the deductions under section 23(e) (1) as losses incurred in trade or business the petitioner wishes us to disregard his corporations as legal entities and to treat their publication business as his own. Such disregard of corporate form is ordinarily not permissible. From the beginning the Revenue Acts have recognized a corporation and its shareholders as separate taxpayers. Even when one man owns all the stock, he and his corporation will usually be treated as separate legal entities for tax purposes. Dalton v. Bowers, 287 U.S. 404, 53 S.Ct. 205, 77 L.Ed. 389; Burnet v. Clark, 287 U.S. 410, 53 S.Ct. 207, 77 L.Ed. 397; Burnet v. Commonwealth Improvement Co., 287 U.S. 415, 53 S.Ct. 198, 77 L.Ed. 399. Although the corporate entity was disregarded in Higgins v. Smith, 308 U.S. 473, 474, 60 S.Ct. 355, 84 L.Ed. 406, this case rather than being in the petitioner's favor militates against him. There it was held that under section 23(e) of the Revenue Act of 1932 no deductible loss occurs upon a sale by the taxpayer to a corporation wholly owned by him. In distinguishing the case of Burnet v. Commonwealth Improvement Co., supra, where the corporate entity was not disregarded and a sale by the corporation to its sole stockholder was held to result in. a taxable profit, Mr. Justice Reed at page 477 of 308 U.S., at page 358 of 60 S.Ct., 84 L.Ed. 406, pointed out the reason for the general rule in these words: "A taxpayer is free to adopt such organization for his affairs as he may choose and having elected to do some business as a corporation, he must accept the tax disadvantages." The government, however, "may sustain or disregard the effect of the fiction as best serves the purposes of the tax statute." We think the Commonwealth Improvement case as thus interpreted is conclusive against the contention of the petitioner in the case at bar. He caused the two corporations to be created for the purpose of publishing their respective magazines. They have appeared in print as the publishers, have taken out the copyrights, have maintained bank accounts, have kept books showing income and expenses, and have enabled Mr. Watson to avoid the embarrassment of billing subscribers and advertisers in his own name, which was one of his reasons for incorporating. Having chosen the corporate form he cannot complain that he is held to it by the taxing officials. He urges that the corporations were neither formed nor availed of to secure any tax advantage. This contention appears to us irrelevant and, in any event, was not proved. The Living Age Corporation made a small profit in 1930 and there is no proof that this was included in the income of the petitioner for that year, as it should have been under the theory that the business was his own.

██ The petitioner's alternative contention claims the deductions as worthless debts. This presupposes, of course, that the corporations are recognized as legal entities. It also presupposes that the moneys which Mr. Watson paid out for their account or advanced to them in cash

were intended to be loans rather than capital investments. The Board did not make a finding as to which they were. Its opinion says that this seems unnecessary because in either case the deductions would be unjustified for reasons there given. Before this court the petitioner has made no contention that he is entitled to the deductions in the years in question if his advances were capital investments; we therefore pass this subject without comment. He claims them only as bad debts. To establish this claim he must first of all show that his advances created debts. His brief states that in computing the losses claimed as deductions he and his accountant "subtracted the claims of all outside creditors first," which "had the effect of giving the outside creditors a complete priority over Mr. Watson's advances." This is practically an admission that the advances were considered capital investments. At any rate it is impossible on the record in the case to determine that the amounts claimed as bad debts represented loans rather than capital investments. Hence the Board did not err in denying the deductions as worthless debts.

Order affirmed.