SALMON et ux. v. COMMISSIONER OF
INTERNAL REVENUE.

No. 12.

Circuit Court of Appeals, Second Circuit.

Feb. 28, 1942.

Ellsworth C. Alvord, Floyd F. Toomey and Karl Riemer, all of Washington, D. C., for petitioners.

Carlton Fox, Sp. Asst. to Atty. Gen., Samuel O. Clark, Jr., Asst. Atty. Gen., and J. Louis Monarch, Sp. Asst. to the Atty. Gen., for respondent.

Before L. HAND, CHASE, and FRANK, Circuit Judges.

PER CURIAM.

■ The question here is whether the petitioners—more strictly the husband— shall be allowed under § 23(e) (1) or (2) of the Revenue Act of 1934, 26 U.S.C.A. Int.Rev.Code, § 23 (e) (1, 2), to take as deductions from their gross income certain payments made in the years 1934 and 1935; in other words whether the payments were losses "incurred in trade or business," or "incurred" in a "transaction entered into for profit." The taxpayer, Salmon, in those years paid the operating deficits of a large office building on the corner of 42d Street and Fifth Avenue in the City of New York. He had personally guaranteed the payment of rent by the lessee of the land—a corporation of which he was the sole shareholder—and of the interest on a series of mortgage bonds secured by the lease. It does not appear how much of the very substantial payments which he made were in performance of these guarantees, and how much were to defray ordinary operating expenses; we attach no importance to any distinction between them. The facts by virtue of which Salmon asserted the right to deduct the payments were as follows. He had become the lessee of the land in question in 1902, while an old building stood upon it; and in the same year he took into the business as a joint adventurer one Meinhard. When the first lease came to an end in 1922, he formed a corporation—Midpoint Realty Company—of which he held all the shares; and this company took a renewal of the old lease in which it promised to begin to put up a new building before 1929. Meinhard thereupon brought an action in the state court to compel Salmon to recognize him as having an equitable half interest in the new term, and succeeded in 1929; the decree gave Salmon the option of substituting for such an interest one-half of the shares—less one—of the Midpoint Company; but this he never exercised. Meinhard v. Salmon, 249 N.Y. 458, 164 N.E. 545, 62 A.L.R. 1. Meanwhile Salmon had formed a new corporation in May, 1929,—"No. 500 Fifth Avenue"—which took over the lease from the Midpoint Company. As soon as the suit was ended Salmon and

Meinhard began jointly to tear down the old building and to put up a new one, each contributing equally. Seven millions of the money came from the bonds we have mentioned; Meinhard did not guarantee these, nor did he guarantee the rents.

The old building had been profitable but by the time the new one was ready in 1931 the fall in the value of real estate made its operation impossible except at a loss, and Salmon and Meinhard were either compelled to pay the deficits, or to suffer the property to become unoccupied and perhaps to pass out of their hands. Meinhard had died and his estate paid to Salmon his part of the deficits; Salmon then paid the company's debts himself directly. His theory is that the joint adventure between him and Meinhard had always continued, and that his part of the payments were losses incurred in the operation of the business and as such deductible under either § 23 (e) (1) or § 23 (e) (2). According to this argument, as we understand it, the judgment in the state action established that the corporation—"No. 500 Fifth Avenue" in succession to the Midpoint Company—became a constructive trustee for both adventurers, but not a trustee in the sense that the Revenue Act treats a trustee as an entity.

We can see no foundation for such an argument. Salmon was a shareholder of the two successive corporations which did not therefore hold the property upon any trust for him. Meinhard was indeed not a shareholder; he had a direct equity in the new lease; his rights were against the legal owner of the term, first the Midpoint Company, second "No. 500 Fifth Avenue." Salmon argues, however, that the fourth article of the decree in the state court changed his relation to these companies from shareholder to beneficiary, because it adjudged that the "lease is held by the defendants in trust for and on behalf of said joint venture between plaintiff and the defendant Salmon under and pursuant to said agreement of May 19, 1902." It is true that the Midpoint Company was one of the defendants, but the only controversy was whether it—and Salmon so far as he retained any interest—held the term in trust for Meinhard. Meinhard had no conceivable concern with whether Salmon's own interest in his half should be that of a shareholder, or of the beneficiary of a constructive trust; and there was in fact not the slightest basis for converting the Mid-

point Company into a constructive trustee for Salmon. It was his creature and it could do nothing except as he directed. We should not therefore read the decree as meaning to change the relations between Salmon and his company; it still held the term though it became subject to Meinhard's equitable interest, and Salmon still remained its shareholder and nothing else.

 That being true, the case fits directly upon the pattern of Higgins v. Smith, 308 U.S. 473, 60 S.Ct. 355, 84 L.Ed. 406, and our recent decision in Watson v. Commissioner, 2 Cir., 124 F.2d 437. A taxpayer, having chosen a corporate form in which to do his business, will not be allowed to disavow it so as to assert that payments made by him, which would be deductible, if he were operating the business, are his and not the corporation's. So far as Salmon's payments were in performance of his guarantees of the rent, or interest upon the bonds, we will assume that he could be subrogated to the claims—at least to the extent of his half—but he has not suggested that they were "worthless debts" and deductible as such. As to the argument that he was bound to Meinhard to pay his own half of the operating expenses, we can find no evidence of it in the record; but, if there be any, we cannot see how it would affect Salmon's tax liability.

Order affirmed.