## PALCAR REAL ESTATE CO. v. COMMISSIONER OF INTERNAL REVENUE.

### No. 12274.

Circuit Court of Appeals, Eighth Circuit.

Nov. 3, 1942.

211

Raymond E. Draper, of Kansas City, Mo. (Frank E. Tyler and Gossett, Ellis, Dietrich & Tyler, all of Kansas City, Mo., on the brief), for petitioner.

Earl C. Crouter, Sp. Asst. to Atty. Gen. (Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key and J. Louis Monarch, Sp. Assts. Atty. Gen., on the brief), for respondent.

Before SANBORN, THOMAS, and JOHNSEN, Circuit Judges.

JOHNSEN, Circuit Judge.

The Board of Tax Appeals redetermined income tax deficiencies against petitioner for the years 1934, 1935 and 1936, on the rents which the corporation had collected from a piece of real estate to which it held the record title, and petitioner seeks to reverse the Board's decision on the ground that the corporation's title to the property was purely nominal and that it was simply serving as a conduit for the payment of the rents to its stockholders as the beneficial owners.

The evidence taken before the Board is not contained in the record before us, so the review here necessarily is limited to a consideration of whether the Board's conclusion is warranted on the basis of its findings of fact. Cass v. Helvering, 8 Cir., 83 F.2d 841. The substance of the material findings of the Board follows.

The real estate involved was a lumber yard property located in Kansas. Title had previously been held in the names of some trustees for the several individuals having undivided beneficial interests therein. In 1933, when the beneficial owners sought to obtain a mortgage loan on the property, the mortgagee required that title be conveyed to a corporation, so that the statutory redemption period could validly be waived.[1] Petitioner was at the time an existing corporation, which had been organized by other persons for the purpose of engaging in the real estate business, but which had never undertaken to function and which had no assets. The beneficial owners of the real estate acquired the corporation from its organizers and had the trustees convey title to the property to it. All of the stock of the corporation was thereafter issued to a trustee for the beneficial owners, in consideration of the conveyance.[2]

The corporation completed the loan and executed the necessary note obligation and mortgage in favor of the mortgagee. It received the $10,000 proceeds of the mortgage and paid out expenses of $643.50 which it had incurred in obtaining and completing the loan. Subsequently, it entered into an agreement with the tenant to

[1] Under Kan.Gen.Stat.1935, § 60-3438 an individual mortgagor could not validly agree to waive the eighteen-months' statutory period of redemption, but under § 60-3439 a corporation was permitted to make such a waiver.

[2] Four shares were issued to other individuals to enable them to qualify as directors, but it is admitted that they had no actual interest in the stock.

reduce the amount of the rent under the 99 year lease that was outstanding upon the property. It collected the rents monthly from the tenant and deposited them regularly in the bank account which it maintained. It made payments, by checks upon its bank account, of the periodical interest instalments upon the mortgage, of the taxes upon the real estate, and of other state and federal taxes. It at all times retained on hand sufficient cash "to make payment of taxes and to provide for other contingencies". The balance of the rental income was distributed equivalently to dividends among the beneficiaries, although the corporation did not bother with the formalities of the usual dividend declaration.[3] The corporation filed regular corporation income tax returns for the years involved, on its rental income, and made deductions for building depreciation in computing the amount of the taxes due. It never filed any fiduciary or information returns under the revenue statutes, and not until 1937, apparently, did it take the view that it ought not to be required to pay income taxes, at which time it attempted to make claims for refund of the taxes previously paid. In 1938, it entered into an agreement with the mortgagee for an extension of the mortgage obligation. Thereafter, presumably because of the present controversy, it executed a conveyance of the property to two trustees for the former beneficial owners.

The Board held on these facts that petitioner's activities for the years involved had been such that the Commissioner was justified in determining that "the corporation's title to the property is not nominal and that it is taxable on the net proceeds realized under the lease". Petitioner contends that the Board erred in not holding, as a matter of law, that it was exempt from the payment of any income taxes, on the ground that it was "a mere 'dummy' corporation, agency, instrumentality or conduit of title and rentals."

█ As we read the expressions in Higgins v. Smith, 308 U.S. 473, 60 S.Ct. 355, 84 L.Ed. 406, it seems to us that we must accept as settled that a corporation which has been conducting business activities as its own, for profit, is not in a position to claim the status of mere nominality for income tax purposes, in order to improve the tax position of its stockholder interests.[4] The government may properly treat the corporate entity and its profit-making operations in such a situation as matters of substance and not of form, if it chooses to do so. The fact that the corporation may neither have been intended nor used to secure some other tax advantage is quite immaterial.[5]

In the present case, the corporation was not intended to, nor did it, serve merely as a mechanical vehicle for obtaining a mortgage loan for the benefit of the pre-

---

[3] The Board held that the distributions made were equivalent, for revenue purposes, to dividends paid, under Peabody v. Eisner, 247 U.S. 347, 38 S.Ct. 546, 62 L.Ed. 1152, and United States v. Phellis, 257 U.S. 156, 42 S.Ct. 63, 66 L.Ed. 180.

[4] "A taxpayer is free to adopt such organization for his affairs as he may choose and having elected to do some business as a corporation, he must accept the tax disadvantages. On the other hand, the Government may not be required to acquiesce in the taxpayer's election of that form for doing business which is most advantageous to him. The Government may look at actualities and upon determination that the form employed for doing business or carrying out the challenged tax event is unreal or a sham may sustain or disregard the effect of the fiction as best serves the purposes of the tax statute." Higgins v. Smith, supra, 308 U.S. at page 477, 60 S.Ct. at page 358, 84 L.Ed. 406.

"The decision in Higgins v. Smith * * * indicates that a taxpayer may not carry on his business through a cor-

poration and at the same time treat it as a mere shadow and disregard its existence whenever recognition will increase tax liability." Vim Securities Corporation v. Commissioner, 2 Cir., 130 F.2d 106, 109.

See also Interstate Transit Lines v. Commissioner, 8 Cir., 130 F.2d 136, 140; Watson v. Commissioner, 2 Cir., 124 F.2d 437, 439. But compare United States v. Brager Building & Land Corporation, 4 Cir., 124 F.2d 349.

In some of the earlier decisions of the Board and the courts, where the tax liability has been attempted to be resolved on the basis of the facts of the particular situation, no clear emphasis has been placed upon the question whether the corporation was conducting actual business activities as its own transactions, from which the controverted income was derived. It is unnecessary to review these decisions here. Some of them appear not to be wholly legally reconcilable on the facts set out in the opinions.

[5] Watson v. Commissioner, 2 Cir., 124 F.2d 437, 439.

vious beneficial owners. Nor was it a mere passive holder of the title. It received and held not only title but control and management of the property, for a period of more than five years. The lease upon the property was assigned to it. It exercised its rights of ownership and control by entering into an agreement with the lessee for a modification of the rental agreement; by collecting the rents as owner and assignee; by maintaining a bank account for the preservation and orderly handling of the funds as its own; by setting aside such part of the income derived from these operations as it deemed necessary to provide for its corporate obligations and contingencies; by keeping up interest payments and taxes; by filing corporate income tax returns and making payment out of its funds of the amounts it conceived to be due from it after allowance of the customary deductions for building depreciation; by making distributions of a certain portion of its earnings equivalently to declared dividends; and by subsequently entering into an agreement with the mortgagee for the extension of its debt obligation.

These were business activities in connection with the proper handling of the property; they were conducted as transactions of the corporation; and they constituted functions which the entity was intended to perform under its charter as a business corporation. The beneficial owners completely surrendered title and control of the property in exchange for the capital stock of the corporation and thereby relieved themselves of the burdens of ownership and management. Out of the corporation's incident of ownership and its activities of management there arose earnings or profits. These earnings or profits were the legal property of the corporation, and the former beneficial owners of the real estate had and could claim no rights in them except as stockholders of the corporation.

All of these facts, we think, were sufficient to justify the Commissioner and the Board in holding that the corporation was engaged in conducting business activities as transactions of the corporation; that these activities were productive of earnings or profits in favor of the corporation; and that the net income therefrom was therefore properly taxable to the corporation.

This disposition makes unnecessary any detailed consideration of the motion filed by respondent to dismiss the review proceeding, except that, since the motion purports to challenge our jurisdiction to consider the review, it should be indicated that we regard the motion as without merit and that it accordingly has been denied. The point involved on the motion was whether petitioner had filed its petition for review within three months after decision was rendered by the Board, as required by 26 U.S.C.A. Int.Rev.Code, § 1142.

The facts, as they appear from the showing made by petitioner, which is not disputed, were that the Board's decision was rendered on August 30, 1941; that the petition for review was mailed to the Board on November 28, 1941, and was delivered to the mailing room of the Board's offices in Washington, D. C., by special delivery messenger, at 1:14 P.M. on November 29, 1941, which was a Saturday; that there was no one in the mailing room at the time and the petition for review was deposited on top of the desk there; that the paper was either not discovered by the Board's employees or not given attention until Monday, December 1, 1941, and was not marked as having been filed until that date; that the rules of the Board provided that "The office of the Board at Washington, D. C., will be open each business day from 9 o'clock A.M. to 4:30 o'clock P.M."; and that Saturday was one of the Board's regular business days.

On these facts, the petition for review must be regarded as having been legally filed when it was delivered to the mailing room where the Board's mail was intended to be regularly received, and was deposited on the desk there at 1:14 P.M. on Saturday, November 29, 1941. Petitioner's right to a review will not be permitted to be defeated by the mere incident that there was no one present in the mailing room to receive the paper or that it was not handled by the Board's employees until December 1, 1941, since these were fortuitous circumstances over which petitioner had no possible control. Compare McCord v. Commissioner, 74 App.D.C. 369, 123 F. 2d 164.

The decision of the Board of Tax Appeals is affirmed.