For the preceding reasons, the Court will grant defendants' motion to dismiss for want of prosecution and violation of court orders pursuant to Fed.R.Civ.P. 41(b).

**LEE BRICK AND TILE COMPANY, INC., Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

No. C–89–908–D.

United States District Court, M.D. North Carolina, Durham Division.

Oct. 1, 1990.

**416**

W. Woods Doster, Sanford, N.C., for plaintiff.

Jon D. Pifer, Trial Atty., Tax Div., U.S. Dept. of Justice, Washington, D.C., for defendant.

## ORDER

RUSSELL A. ELIASON, United States Magistrate.

Plaintiff Lee Brick and Tile Company, Inc. moves to compel discovery prior to being required to respond to defendant's motion to dismiss. The defendant (government) contends such discovery is unnecessary, seeks a protective order against answering it or against further discovery and requests that plaintiff respond forthwith to the motion to dismiss. The resolution of this discovery dispute cannot be made without first taking a peek at the merits of the underlying controversy.

### I. *Factual Background*

Plaintiff filed a refund claim for federal income taxes for the period ending March 31, 1985. Plaintiff alleges that it timely mailed, hence filed, its refund claim on June 13, 1988 which is prior to the limitations period of June 17, 1988 in accordance with 26 U.S.C. § 6511(a).[1] The Internal Revenue Service disallowed plaintiff's claim for a refund. It has not been able to locate any refund requests from plaintiff sent on or about June 13, 1988. Plaintiff filed this action pursuant to 26 U.S.C. § 7422 to recover the refund.

The government has filed a motion to dismiss the complaint for lack of jurisdiction. It states that not until May 29, 1989 did it receive any documents which it was willing to treat as a request for a refund. The government contends this Court lacks jurisdiction over plaintiff's refund request because it was filed outside the applicable three-year statute of limitations and, therefore, is untimely in accordance with 26 U.S.C. §§ 6511(a) and 7422(a). It argues the request for refund must actually be received by the Internal Revenue Service ("IRS") on or prior to the deadline or else, in accordance with 26 U.S.C. § 7502, the IRS must have received the document (in this case the refund request) and the taxpayer must produce proof that he mailed the refund request on or prior to the deadline by establishing a postmark on the document or a registered or certified mail receipt. The government attaches to its motion to dismiss, a declaration from an employee of the IRS, who states in conclusory terms that she made a diligent search of the appropriate records but has not found any record that on June 13, 1988 plaintiff filed a refund request or that any refund request for the income taxes was filed before May 25, 1989.

Plaintiff served interrogatories directed to defendant requesting information on steps taken to locate plaintiff's refund request, the investigation procedures and whether the IRS has lost other tax information or received complaints. The government objected to these interrogatory requests on the grounds that they were irrelevant, overbroad and unduly burdensome because the issue was whether plaintiff filed a timely claim for a refund and not whether the IRS lost the document. Plaintiff also asked whether the IRS received an income tax return from plaintiff for the fiscal year ending March 31, 1988, which was mailed within a few days of the alleged lost refund claim. Defendant states it will produce the document if it

---

1. Plaintiff filed its income tax return on June 17, 1985. The normal filing period would have ended on June 15, 1985 but that date fell on a Saturday. 26 U.S.C. § 6072(b).

exists but plaintiff counters that so far defendant has not produced a copy of that return, intimating that it too may have been lost. In accordance with Rule 34, Fed.R.Civ.P., plaintiff further requested the production of various documents including all income tax returns, amended returns, refund claims, correspondence and checks involving plaintiff's taxes for the years 1985 through 1990, and all correspondence or documents of any kind from plaintiff or sent to plaintiff. Defendant produced some of this information but apparently not all of it, especially the 1988 tax return.

In support of its motion to compel, plaintiff attaches the affidavit of its president, Frank Perry, who testifies that on June 13, 1988 he signed a federal tax refund request for $54,367.00 and a state tax refund request for $7,549.00 and took both requests to the United States Post Office in Sanford, North Carolina, and mailed them. He states that in due time he received the refund from the State of North Carolina but not from the IRS. Plaintiff also included a certificate from the director of the North Carolina Corporate Income Tax Division producing a certified copy of the state tax refund request submitted by plaintiff and dated June 13, 1988. These documents do not show a postmark or when they were received but they do indicate that the refund claim was in fact paid on September 16, 1988.

On June 13, 1988, Mr. Perry also signed the federal and state tax return for the year ending March 31, 1988 showing tax liability in the respective amounts of $451,-430.00 and $90,955.00. Because these returns require the plaintiff to pay money, the bookkeeper was instructed to not mail the returns until June 15, 1988, which she did. This is corroborated by her affidavit.

### ISSUES

Because the IRS cannot find the refund request, the government asserts that plaintiff can only show timely filing by producing a registered or certified mail receipt, which it cannot do. It further claims that plaintiff cannot conduct any discovery concerning whether the IRS actually received the refund request once it produces evidence that it searched for the document and reports it cannot be found.

Plaintiff relies on the Fourth Circuit's decision in *Curry v. C.I.R.*, 571 F.2d 1306 (4th Cir.1978). In that case, the court held that a prison inmate's petition for a redetermination of tax deficiencies would be regarded as having been timely filed where, on the day before the statutory deadline, the inmate had placed the documents in the prison mail but prison officials caused a delay in mailing to the IRS. The government contends that *Curry* is limited to the special situation concerning prison inmates. However, a close reading of *Curry* does not support that position. For the following reasons, the government's motion for a protective order shall be denied and plaintiff shall be granted limited discovery rights.

### II. *Discussion*

■ A timely filing of a refund claim is a jurisdictional prerequisite for a tax refund action in this Court. 26 U.S.C. § 7422(a). The taxpayer has the burden of establishing this Court's jurisdiction over its action. *Miller v. United States*, 784 F.2d 728, 729 (6th Cir.1986). If disagreement over the Court's subject matter jurisdiction involves factual disputes, the Court has leeway to develop a record through live testimony, affidavits or other procedures as may be appropriate. *Redman v. C.I.R.*, 820 F.2d 209, 211 (6th Cir.1987). The taxpayer must prove the jurisdictional facts by a preponderance of the evidence. *H.S. & H. Ltd. of Columbia, Ill. v. United States*, 18 Cl.Ct. 241 (1989). If the taxpayer is foreclosed from producing any evidence in response to a motion to dismiss because the evidence would be inadmissible or irrelevant, the Court will terminate discovery and rule on the motion to dismiss without further developing an evidentiary record.

■ In this case, the government shows that it cannot find any evidence in its files of a refund claim. Nor, can plaintiff produce a registered or certified mail receipt evidencing mailing of a refund request. Consequently, the government argues further discovery is irrelevant because plain-

tiff is foreclosed from making any further evidentiary presentation. The Court disagrees with the government's position.

The general rule is that the tax document in question is considered filed when it is delivered to the IRS. *Emmons v. C.I.R.*, 898 F.2d 50 (5th Cir.1990). The Internal Revenue Code requires actual receipt or payment. *First Charter Financial Corp. v. United States*, 669 F.2d 1342, 1345–47 (9th Cir.1982). With respect to mailed documents which are subject to the vagaries of postal delivery, Congress provided an alternative method for determining the timely filing of a document. It enacted 26 U.S.C. § 7502 which permits the postmark on the document or the certified or registered receipt to constitute evidence of delivery through a presumption of receipt on the postmark date. *Estate of Wood v. C.I.R.*, 909 F.2d 1155, 1159 (8th Cir.1990). Prior to Section 7502's enactment in 1954, the courts generally applied, with respect to mailed documents, the common law presumption of delivery upon proof of mailing. *Estate of Wood v. C.I.R.*, 909 F.2d at 1159; *Curry v. C.I.R.*, 571 F.2d at 1308; and *Arkansas Motor Coaches, Ltd. v. C.I.R.*, 198 F.2d 189 (8th Cir.1952).

The government contends that with the enactment of Section 7502, Congress abolished the common law presumption of delivery and, therefore, the taxpayer can only prove timely filing of a mailed document solely by reference to that section. Section 7502 provides for two instances where the mailing of a document will be considered timely filed even though there is belated delivery. First, in Section 7502(a)(1), if a document is actually received by the IRS but belatedly delivered, the taxpayer may rely on a postmark, which is dated on or before the filing deadline and placed on the document either by the United States Post Office or a private postal vending machine, to establish, through the postmark, timely delivery. *See Rotenberry v. C.I.R.*, 847 F.2d 229 (5th Cir.1988) (private postage meter). The second exception to actual timely delivery is found in Section 7502(c). It provides that registration of the mail is prima facie evidence of delivery and the date of registration is deemed to be the postmark date. (Provisions are also made for certified mail.) Under both subsections, it is the date of the postmark as opposed to the date of actual receipt which is crucial. *Estate of Wood v. C.I.R.*, 909 F.2d at 1161.

Because plaintiff cannot satisfy any of the conditions of Section 7502, the next question is whether there are any other methods whereby plaintiff may conceivably establish this Court's jurisdiction over the controversy and whether such methods justify discovery by the taxpayer. The government argues that when the taxpayer mails the document, then in every instance where the IRS cannot find the document in its files with a postmark or the taxpayer cannot produce a registered or certified mail receipt, the taxpayer is foreclosed from proceeding or conducting discovery. It contends that Section 7502 contains the only means for proving delivery aside from physical delivery.

The government's argument sweeps too broadly. First, Section 7502 does not contain the only applicable presumptions with respect to mail delivery of tax documents. Second, the argument ignores the interrelated significance of the second presumption applicable in these cases. This other presumption concerns whether the Court should accept the government's proffer and declaration that it does not have the taxpayer's document based on the presumption of regularity pertaining to government records. For example, in the instant case, the government attempts to prove non-delivery by showing the absence of the document in its files by a declaration of a record search.

## THE PRESUMPTION OF DELIVERY FROM MAILING

Turning to the first issue, the government argues that Section 7502 must be strictly construed as creating the two exclusive and limited presumptions to the requirement of physical delivery, citing *Miller v. United States*, 784 F.2d 728, and *Deutsch v. C.I.R.*, 599 F.2d 44 (2d Cir.1979), *cert, denied*, 444 U.S. 1015, 100 S.Ct. 665,

62 L.Ed.2d 644 (1980). In *Deutsch*, the Second Circuit stated that the exceptions in Section 7502 were exclusive and cited the need for an easily demonstrable objective standard for delivery. It refused to accept the extrinsic evidence of an accountant who claimed that he had timely mailed a letter to the tax court.

The Sixth Circuit approved the *Deutsch* construction of Section 7502 in *Miller v. United States*, 784 F.2d 728, with respect to a refund claim. That court held that Section 7502 was not meant to be a "safe harbor" by creating two additional exceptions to the physical delivery rule but the two were the exclusive exceptions. *Id.* In *Surowka v. United States*, 909 F.2d 148 (6th Cir.1990), it reaffirmed its position in an action to recover an allegedly wrongfully assessed tax payment wherein plaintiffs complained that the IRS lost the tax return. The *Surowka* court held that because the claim was never received by the IRS and it was not sent by registered or certified mail, the exceptions of Section 7502 did not apply. Consequently, it refused to permit the judicially created common law presumption concerning proof of a properly mailed document to be used in addition to Section 7502 in order to prove delivery and, therefore, filing. The court cited the need for an easily applied objective standard and the fact that other courts have consistently rejected testimony or other evidence of proof of the date of mailing as opposed to actual postmark dates, as required by Section 7502, in order to prove delivery.

Other courts, however, have not construed Section 7502 as providing the exclusive presumptions with respect to proof of delivery of mailed documents. Importantly for this case, in the Fourth Circuit, the court specifically held that enactment of Section 7502 did not eliminate the prior judicially created common law presumption of delivery by proof of mailing. *Curry v. C.I.R.*, 571 F.2d at 1308. The court noted that Section 7502 was enacted to " 'eliminate the random distribution of hardships occasioned by variations in postal performance.' " *Id.* (quoting *Sylvan v. Commissioner*, 65 T.C. 548, 554 (1975)). It further held that Congress addressed the problem of late mail delivery in Section 7502 but there was no indication that the legislation intended to repudiate the judicially created common law presumption with respect to mail delivery. *Id.* Finally, the Court held that Section 7502 should not be rigidly applied when the taxpayer has done everything in his power to place the document in the mail. It noted that other courts have allowed extrinsic evidence to establish the probable postmark when the postmark on the document has been smudged or the document arrived through the mail without a postmark, citing *Skolski v. C.I.R.*, 351 F.2d 485 (3d Cir.1965), and *Sylvan v. Commissioner*, 65 T.C. 548, respectively.

It is true that *Curry* dealt with a situation involving prisoner mail and as the Supreme Court recently found, special rules at times may apply to prisoners. *Houston v. Lack*, 487 U.S. 266, 108 S.Ct. 2379, 101 L.Ed.2d 245 (1988) (notice of appeal). The Fourth Circuit in *Curry* noted this rationale but did not exclusively predicate its decision on that distinction. (In fact, Judge Hall specifically dissented on the point that he would have interpreted Section 7502 as requiring a postmark on a stamped envelope to meet the requirements of Section 7502.) Notwithstanding, the court was also careful to observe that in the case before it there was "abundant evidence" proving the time the prisoner attempted to mail the petition and cautioned that uncorroborated claims would not fare as well.

The Eighth Circuit in *Estate of Wood*, 909 F.2d 1155, has also refused to interpret Section 7502 as containing the only presumptions which may be used to prove delivery and filing. The document could not be found, but the taxpayer produced evidence in the form of the postmaster actually testifying that the document was posted prior to the expiration of the limitations period and that she postmarked the document and placed it in the mail. The Commissioner argued that the taxpayer failed to timely file his election for a special use valuation and could not invoke Section 7502(a)(1) for two reasons. First, the document was never delivered and second, the

taxpayer had no facial evidence of a postmark.

The court found that it and other courts utilized the common law presumption of delivery, by proof of mailing, prior to the enactment of Section 7502. It rejected the reasoning of those recent decisions which interpret Section 7502 as containing the exclusive provisions with respect to presumption. It noted that when Congress wishes to change the law, the statutory enactment contains some indication that the old law has been altered. Because the common law presumption was in general use prior to the enactment of Section 7502, it looked to that statute to discover any intent by Congress to eliminate the common law presumption and found none.

Finding that the common law presumption was not eliminated by Section 7502, the Eighth Circuit determined it could be employed, at least in the limited situations where the postmark can be conclusively established. In support of the position, it noted that a postmark is evidence which is verifiable beyond the self-serving testimony of a taxpayer. As distinguished from *Miller* and *Deutsch*, the *Wood* court found that the postmark was actually established by direct evidence even though this evidence was also extrinsic. It held that only such direct proof of the postmark would satisfy its test and even this would only raise a presumption and that the Commissioner could rebut the presumption, citing *Walden v. C.I.R.*, 90 T.C. 947 (1988).

Both *Curry v. C.I.R.*, 571 F.2d 1306, and *Estate of Wood v. C.I.R.*, 909 F.2d 1155, establish that when the taxpayer has extremely strong independent, if not conclusive, evidence of mailing, then he may utilize the judicially created common law presumption as to mailing. Thus, Section 7502 does not contain the two exclusive presumptions to the actual delivery rule. It is important to note that in both cases there was apparently unbiased and independent testimony of third parties—prison officials in one case and the postmaster in the other.

## PRESUMPTION OF NON–RECEIPT

In addition to cases which involve near, irrefutable proof of mailing, another category of cases may well deserve the benefit of the common law presumption of mailing: Those involve situations where (1) there is an extremely strong or independently verifiable, but not conclusive, proof of mailing in conjunction with (2) insufficient evidence of non-receipt, including IRS negligence in losing the document. In fact, although it did not rely on the latter factor to reach its decision, in *Estate of Wood v. C.I.R.*, 909 F.2d 1155, the court noted that the Commissioner "actually adduced no evidence before the tax court that the IRS did not receive the return." *Id.* at 1157. And, in *Mitchell Offset Plate Service, Inc. v. C.I.R.*, 53 T.C. 235 (1969), while the proof of mailing did not rise to the high levels found in *Curry* or *Estate of Wood*, the court found a significant inadequacy in the government's proof of non-receipt, which proof relied on the presumption of correctness normally accorded government records.

In *Mitchell Offset Plate Service*, the taxpayer filed two Subchapter S election forms. These were allegedly mailed within thirty days after the formation of the corporation and the addition of shareholders. The IRS did not challenge the initial shareholder returns for the first three years but thereafter challenged the returns for the years 1963 and 1964. The IRS could not find the Subchapter S elections and, therefore, charged the taxpayers with the receipt of dividend income. There was strong and independent proof of mailing. An accountant testified that he prepared the election and consent forms, had them signed and deposited them in the mail prior to the expiration of the 30–day period. When new shareholders were added, he also timely prepared the consent forms and gave them to the taxpayers who testified that they signed and mailed them the same day. The court characterized this testimony as giving rise to a "strong presumption of delivery."

In addition to the strong presumption of delivery, it found the government's evidence, that the IRS had not received these documents, to be negative at best. It not-

ed special circumstances which cast doubt on the presumption of correctness of government records. First, Subchapter S status had recently been enacted and the procedures for maintaining the files were still new in 1959. Furthermore, these files were at first kept by the director of the lower Manhattan district but that office, within a year, was combined with the upper Manhattan district. In addition, in 1968 all of these files were transferred to a regional center. Next, the only effort to locate these documents was a request to a file room employee who was not called as a witness. Furthermore, no search was ever made to locate other related documents which would indicate that the IRS's record system was correctly operating. The regular corporate tax returns for the years 1960 and 1961 were not found, nor were any searches made of the individual tax returns of the individuals involved for the prior years. Finally, the IRS failed to give any explanation for failing to question the timeliness of the Subchapter S elections in earlier years.

## THE MITCHELL OFFSET EXCEPTION

■ Thus, in addition to cases which involve near conclusive proof of mailing and/or postmark, the common law presumption of mailing may be employed where the taxpayer can show strong or independently verifiable evidence of mailing in conjunction with failure on the government's part to adequately show non-receipt. Strong evidence of mailing will, in most cases, require more than statements by the taxpayer but rather independent evidence. *Contrast Spanner v. C.I.R.*, 56 T.C.M. (CCH) 150 (1988) (extrinsic proof of mailing rejected when not verified by cancelled check sent with the return or even the check stub). The requirement of strong or independently verifiable evidence of mailing is necessary in order to avoid taxpayer fraud. *Gripentrog v. C.I.R.*, 34 T.C.M. (CCH) 1455 (1975) (taxpayer backdated documents).

■ In order to invoke the common law mailing presumption under the *Mitchell Offset* scenario, the taxpayer, in addi-

tion to showing strong or independently verifiable evidence of mailing must also show or point to the government's failure to satisfy its burden, *i.e.*, that it did not receive the document. Normally the government satisfies this burden by relying on the presumption of regularity. It enjoys this presumption of regularity in administering its tasks, in the absence of clear evidence to the contrary. *United States v. Ahrens*, 530 F.2d 781, 785 (8th Cir.1976). "Government officials are presumed to carry out their duties in good faith." *Spezzaferro v. F.A.A.*, 807 F.2d 169, 173 (Fed.Cir.1986). To overcome this presumption, taxpayers must come forward with credible evidence. "Unsubstantiated suspicions and allegations are not enough." *Id.* While it is often said that such proof must be almost indisputable, *id.*, it is also true that the status and strengths of presumptions vary in accordance with the policies behind creating them. *Tafoya v. Sears Roebuck and Co.*, 884 F.2d 1330, 1336 (10th Cir.1989).

■ Even though the government is entitled to the presumption of regularity with respect to its records of receipt of documents, this presumption is rebuttable. *See generally Legille v. Dann*, 544 F.2d 1, 5 (D.C.Cir.1976) (patent office procedures); *but see Parr v. U.S.*, 694 F.Supp. 146 (D.Md.1988). It is not unheard of that the IRS may well lose, destroy or misfile a document and, in fact, at times it concedes as much. *Tax Analysts v. United States*, 11 Cl.Ct. 802 (1987). When the evidence and presumption of mailing raise disputed material facts which conflict with a weakly established presumption of non-receipt, the Court must resolve the evidentiary conflicts on the merits and not in a motion to dismiss or summary judgment. *Legille v. Dann*, 544 F.2d at 10–11.

■ In order for the IRS to rely on the presumption of regularity and correctness, it must produce evidence clearly establishing that the records were not received such as by testimony of IRS record keeping procedures along with production of records and transcripts showing the depth of the search. *H.S. & H. Limited of*

*Columbia, Ill. v. United States,* 18 Cl.Ct. 241. It is the taxpayer who bears the burden of producing reliable evidence to rebut the presumption that the IRS records are true, accurate and correct. *Id.*[2] *Christensen v. U.S.,* 733 F.Supp. 844, 852 (D.N.J. 1990). When the taxpayer presents some evidence which calls the presumption of correctness into question, it may be entitled to discovery to meet this burden.

### . AVAILABILITY OF DISCOVERY

 Discovery may be available to the taxpayer, even though it has not satisfied the requirements of Section 7502 but rather attempts to rely on common law presumption of delivery by proof of mailing. To have discovery, the taxpayer must produce a prima facie case for the common law mailing presumption and some evidence to question the presumption of correctness of the government's records. Here, the taxpayer discloses some possible independent evidence of mailing aside from the affidavits of its own officers or employees. Plaintiff shows that a refund request was submitted and delivered to the State of North Carolina. While plaintiff has not presented proof of the postmark on that state refund request, it does show it was acted upon three months after the alleged mailing. *Contrast Walden v. C.I.R.,* 90 T.C. 947 (both federal and state return not delivered). Moreover, the federal refund was substantial and it was in the plaintiff's interest to file it along with his state refund request. While not overwhelming,

this is some independent evidence of plaintiff's claim.

In conjunction with this possible strong and independently verifiable evidence of mailing, the government's evidence in support of its presumption that the refund request was not received is very weak. It merely submits a declaration by an employee that she made a diligent search at the Memphis, Tennessee, service center and could not find a record for a refund request. In many cases, such a declaration may well be sufficient. However, in the instant case there are two matters which indicate that discovery is appropriate. First, as previously mentioned the taxpayer has produced some independent evidence of mailing because of the state refund claim. Second, there is an indication in the record that the IRS may well have lost, not received or misfiled a tax return for the year ending March 31, 1988 which was filed at or about the same time as the refund request. As in *Mitchell Offset Plate Service,* such discrepancies often may constitute convincing evidence in rebuttal to the presumption of regularity. This is not to say that plaintiff will necessarily likely prevail. It faces an uphill burden. But, there are sufficient, possible controverted facts so that plaintiff deserves to conduct an exploration through discovery.

### GOVERNMENT'S MOTION FOR PROTECTIVE ORDER

Having decided that plaintiff is entitled to discovery in this case, the Court address-

---

**2.** Plaintiff argues that *Curry v. C.I.R.,* 571 F.2d 1306 (4th Cir.1978), should be read as holding that if it can prove any government officer, whether he is a postal service officer or an IRS employee, was negligent in losing its return, then it should be allowed to use the general presumption of mailing. The argument is rejected. The Fourth Circuit did not explicitly adopt such a rule and numerous other courts have rejected it also as noted by the Eighth Circuit in *Estate of Wood v. C.I.R.,* 909 F.2d 1155, 1161 (8th Cir.1990) (citing *Feldman v. C.I.R.,* 47 T.C. 329 (1966) (postal service put postmark on letter one day late); and *Rappaport v. C.I.R.,* 55 T.C. 709 (1971), *aff'd,* 456 F.2d 1335 (2d Cir.1972) (post office failed to postmark envelope)). Further, in *Drake v. Commissioner,* 554 F.2d 736 (5th Cir.1977), a change in the postal cancellation process was not an excuse and in *Walden v. C.I.R.,* 90 T.C. 947 (1988),

the court found a post office employee lost the document but that the taxpayer bore the risk of loss and non-delivery.

In *Sylvan v. Commissioner,* 65 T.C. 548 (1975), which overruled *Rappaport,* the court held that the failure of the mailed envelope to have a stamped postmark will be treated like an envelope with an illegible mark and that extrinsic evidence can be used to establish the date of the postmark. The result was noted with approval in *Curry* at 1309. However, the scenario of those cases is limited to negligence in the postmarking of an envelope which actually arrives at an IRS office. Providing an exception in this very limited circumstance is a far cry from letting a taxpayer rely on the negligence of any government agent to serve as an excuse for the untimely arrival of a document at the IRS or its complete absence.

es the government's request that the motion to dismiss be decided prior to the completion of plaintiff's discovery requests. Because plaintiff is entitled to discovery, it is entitled to conduct the discovery prior to a ruling on the motion to dismiss.

In the instant case, the defendant filed a motion to dismiss but in fact made references to facts outside of the pleadings by including the declaration with respect to the search for the documents in question. In such an instance, the motion to dismiss is treated as one for summary judgment and the opposing party must be given reasonable notice and an opportunity to conduct discovery. *See Davis v. Zahradnick,* 600 F.2d 458 (4th Cir.1979); and *Gay v. Wall,* 761 F.2d 175, 177 (4th Cir. 1985). When specific material facts are identified which can be procured through discovery and are in the possession of the moving party, the Court normally will permit discovery and stay ruling on the motion for summary judgment. *See Lunderstadt v. Colafella,* 885 F.2d 66, 71 (3d Cir.1989); 10A Wright, Miller & Kane, *Federal Practice and Procedure* §§ 2740 and 2741 (1983). The Court may also impose restrictions on such discovery with respect to time and the types of discovery and the persons and issues subject to discovery. *Id.* § 2740 at 539–41. These general rules apply to the instant case and discovery will be granted to the extent appropriate. Therefore, the government's motion for a protective order will be denied.

### PLAINTIFF'S MOTION TO COMPEL DISCOVERY

Turning to the specific discovery requests, the Court will grant plaintiff's motion to compel answers to interrogatory no. 1 which asks for information on the steps taken, and by which employees, to locate plaintiff's claim for refund prior to the IRS's declination letter. This information which inquires into the quality of the search is relevant in this case because of the government's conclusory declaration.

The Court will grant plaintiff's motion to compel interrogatory nos. 3 and 5 but deny interrogatory nos. 2 and 4. Interrogatory no. 3 asks whether the Memphis Service Center has in the past ten years received any complaints about lost documents and in that regard the number of complaints, the procedure for investigating the validity of the complaints and the results of the investigations. Interrogatory no. 2 requests the same information for the entire Internal Revenue Service. Because plaintiff's refund request was mailed to the Memphis Service Center, only the records and procedures of that center are pertinent. Interrogatory no. 5 asks whether the IRS at the Memphis Service Center has lost a tax return or other document and to state the number of incidents for the last 10 years. Interrogatory no. 4 asks the same information for the entire Internal Revenue Service. Again, only the record at the Memphis Center is relevant to this case and only interrogatory no. 5 need be answered.

The Court is not ruling that the 10–year period for interrogatories 3 and 5 is in fact reasonable and not burdensome. Defendant has not addressed that issue. Under the facts of this case, plaintiff has presented a prima facie case entitling it to some general information about complaints and lost documents.

Interrogatory no. 6 asks whether the IRS received plaintiff's tax return for fiscal year ending March 31, 1988 and interrogatory no. 7 requests production of that tax return. This request is relevant since it may produce evidence casting doubt on the presumption of regularity if this document, which was mailed at or about the time of the refund claim, also cannot be found.

Plaintiff's motion to compel production of its first request for production of documents is not so easily resolved. Plaintiff's request no. 1 seeks all income tax returns, amended tax returns, claims, refund claims and correspondence, etc., concerning plaintiff for the period from January 1, 1985 to January 1, 1990. It is not clear whether defendant has responded to this request. From the Court's understanding, it appears that the IRS only will produce copies of the 1984 amended tax return and various letters in 1989 and otherwise deems the request overbroad. The

**424**

Court finds defendant has failed to adequately respond to the request and shall produce the tax returns, amended returns, claims, notices with respect to the returns, and pertinent correspondence and documents with respect to the controversy which is the center of this lawsuit and that the relevant time period is the years 1985–1989.

Request to Produce no. 2 seeks any correspondence or documents of any kind sent from or by the IRS to plaintiff. Defendant objects that the request is overbroad and the Court agrees. This request is not tailored to the facts and issues material to this case and, therefore, the motion to compel will be denied.

IT IS THEREFORE ORDERED that defendant's motion for a protective order that it not further respond to plaintiff's interrogatory nos. 1 through 5 and plaintiff's request for production of documents nos. 1 through 2, and that plaintiff be commanded to cease making discovery requests on the United States until the Court rules on defendant's motion to dismiss is denied.

IT IS FURTHER ORDERED that plaintiff's motion to compel discovery is granted in part and denied in part as is more specifically set out in the body of this Order.

IT IS FURTHER ORDERED that all discovery shall be completed on or before December 17, 1990.