STANLEY J. LUDWIG AND BARBARA LUDWIG, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Ludwig v. Commissioner
Docket No. 27836-92
United States Tax Court
T.C. Memo 1994-518; 1994 Tax Ct. Memo LEXIS 526; 68 T.C.M. (CCH) 961; October 17, 1994, Filed *526 Decision will be entered for respondent. For petitioners: Richard M. Henry. For respondent: Christine V. Olsen. RAUM
RAUM
MEMORANDUM OPINION RAUM, Judge: The Commissioner determined an income tax deficiency of $ 7,473 against petitioners for 1990. Petitioners are husband and wife, but references hereinafter to petitioner in the singular are to the husband. Petitioners challenge the deficiency on the ground that they were improperly denied a deduction either as a business expense under section 162 [1] or as a loss under section 165 for payment in 1990 of time and a half overtime wages owed to former employees of petitioner's wholly owned corporation. The case was submitted on the basis of a stipulation of facts. Petitioners resided in Lake Elsinore, California, at the time they filed their petition. Mr. Ludwig was the sole shareholder of Stan Ludwig Construction, Inc., which was incorporated *527 in 1982. As stipulated by the parties, he "organized, owned and operated the corporation with an expectation of profit, including his salary as president, dividends on his stock ownership, and/or appreciation in the stock's value." The corporation was liquidated in 1988. During the following year, 1989, former employees of the corporation contacted the U.S. Department of Labor, Wage and Hour Division (DOL). At the former employees' request, the Wage and Hour Division began an investigation into whether the corporation owed the former employees overtime wages. Sometime "in or around 1989", the DOL filed suit in the United States District Court against both the corporation and Mr. Ludwig, alleging that Mr. Ludwig "was an 'alter-ego' of the Corporation and therefore personally liable to pay the over-time wages claimed by the former employees * * * pursuant to relevant sections of the United States Code." Mr. Ludwig appeared in the litigation and defended himself against charges stemming from the allegations. Following settlement negotiations, a Stipulated Judgment (settlement or judgment) was reached whereby Mr. Ludwig agreed to pay $ 25,148 as overtime wages claimed by the former *528 employees of the corporation. The judgment provided that the payment was in settlement of his personal liability for the alleged failure of the corporation to pay the claimed overtime wages. The parties stipulated that "The payments were made by Stanley Ludwig directly to the employees" and that such payments were "for liability which arose under Federal Civil Statutes [2] and * * * represented actual damages claimed by the former employees of the Corporation." The parties also stipulated that "Petitioners had no expectation that profits would be forthcoming by making" such payments to the former employees. Payment was thereafter made in accordance with the terms of the Stipulated Judgment. *529 On Schedule C (entitled "Profit or Loss from Business") of their 1990 joint Federal income tax return (Form 1040), petitioners deducted $ 27,122 ($ 25,148 for wages and $ 1,974 for taxes and licenses) in respect of payments to former employees of the corporation. During 1990, the corporation was no longer in business, and both petitioners worked as employees of different companies. [3]
Our difficulty at the outset in making a proper analysis of this case is due largely to the unsatisfactory explanation of the deficiency furnished by the Commissioner in the notice of deficiency. The notice was obviously not individually tailored to fit the facts of this case but was rather an exasperating "one-size-fits-all" computer generated type of notice. [4] The notice made two adjustments: (a) the disallowance of the $ 27,122 expense deduction claimed by petitioners on their Schedule *530 C; (b) the allowance of a $ 3,000 bad debt deduction not previously claimed by petitioners, which, as hereinafter explained, appears to be related to the first adjustment.
In respect of the first adjustment, the notice stated: Since you did not establish that the business expense shown on your tax return was paid or incurred during the taxable year and that the expense *531 was ordinary and necessary to your business, we have disallowed the amount shown [$ 27,122].
Plainly, the first part of this computer generated explanation was incorrect as it related to this case. The amount in question was in fact paid during the taxable year, and both parties on brief have treated the payments as having been made in 1990, the taxable year. On the other hand, petitioners' attack on the second part of the explanation of the first adjustment must be rejected. The expenses paid by Mr. Ludwig were not deductible by him under section 162(a) as expenses of his trade or business. Although he was the president and sole stockholder of Stan Ludwig Construction, Inc., the business of the corporation may plainly not be treated as the trade or business of Mr. Ludwig, himself, a distinction which has been recognized in a long line of cases. E.g., Whipple v. Commissioner, 373 U.S. 193, 202 (1963); Deputy v. Du Pont, 308 U.S. 488, 494 (1940); Watson v. Commissioner, 124 F.2d 437, 439 (2d Cir. 1942), affg. 42 B.T.A. 52 (1940); Ihrig v. Commissioner, 26 T.C. 73, 76 (1956); *532 Van Hassent v. Commissioner, T.C. Memo. 1990-585, 60 T.C.M. 1244, 1247 (1990). Petitioners argue in the alternative that the loss sustained upon Mr. Ludwig's payment of overtime wages to the former employees of his defunct corporation gave rise to a deduction under section 165(c)(2) as a loss "incurred in any transaction entered into for profit, though not connected with a trade or business". Regardless of various possible grounds upon which that position may be attacked, [5] the point need not be addressed by reason of our factual analysis of the situation that gave rise to the Commissioner's second adjustment, namely, the allowance of an unclaimed but related $ 3,000 bad debt deduction in the deficiency notice. The *533 Commissioner's limited allowance of the $ 3,000 unclaimed deduction as a bad debt was cryptically explained in the deficiency notice by the computer as follows: 3116 Bad Debts Your nonbusiness bad debt can be deducted only as a short-term capital loss. Capital losses are deductible only to the extent of capital gains plus $ 3,000 (or $ 1,500 for married filing separate). We have adjusted your loss accordingly. You may carry any unused loss forward to future years.
That explanation followed immediately after the disallowance of the deduction of $ 27,122 in connection with the overtime wages paid by petitioner to former employees of his corporation. We think that we have been able to unravel the mystery of the unclaimed $ 3,000 bad debt allowance, which the notice apparently treated as directly related to the disallowance of the $ 27,122 claimed deduction, and as thus explained, it represents in our judgment the correct analysis of the entire situation. We begin with the suit itself against petitioner as the alleged "alter-ego" of his corporation. It seems clear that petitioner stood in the shoes of his corporation for purposes of the suit by reason of 29 U.S.C. section 203 *534 (d) (1988), which provides that "'Employer' includes any person acting directly or indirectly in the interest of an employer in relation to an employee". It was in this sense that petitioner was the "alter- ego" of his corporation. As a consequence, when he discharged the corporation's obligation to the employees for overtime wages, the corporation became indebted to him for the amount thus paid by him. But the corporation was then defunct, and the debt became uncollectible the moment it arose. This uncollectible debt thus served as the basis for a bad deduction under section 166. [6] Accordingly, since the business of the corporation was not petitioner's business, as we held above, the loss due to such bad debt was deductible as a nonbusiness bad debt pursuant to section 166(d)(1)(B), which provides: (d) Nonbusiness-Debts. *535 (1) General rule. -- In the case of a taxpayer other than a corporation -- * * * (B) where any nonbusiness debt becomes worthless within the taxable year, the loss resulting therefrom shall be considered a loss from the sale or exchange, during the taxable year, of a capital asset held for not more than 1 year.
Thus, petitioner's $ 27,122 bad debt was deductible only as a "short-term" capital loss. But, under section 1211(b) such deduction on a joint return cannot exceed $ 3,000. As a consequence, petitioners were entitled to deduct in 1990 only $ 3,000, but are entitled to carry over the unallowed portion to later years under section 1212(b). In sum, petitioner's payment of overtime wages of his corporation's employees was the basis for a bad debt deduction which resulted in a $ 3,000 capital loss deduction accompanied by carryovers to future years. This, we think, is the correct analysis of what is before us, and it undercuts any claims that petitioners have advanced in respect of deductible losses. Cf. Spring City Foundry Co. v. Commissioner, 292 U.S. 182, 189 (1934). It may be appropriate to add a few words about the wholly *536 inadequate explanation of the $ 3,000 bad debt adjustment in the deficiency notice. Section 7522(a)[7] provides to the extent relevant here that any "notice * * * shall describe the basis for, and identify the amounts (if any) of, the tax due". And section 7522(b) specifies that these provisions shall apply to, among others, any notice of deficiency "described in section * * * 6212", which in turn makes these provisions applicable by cross-reference, inter alia, to a notice of deficiency in income tax. Plainly, the notice of deficiency in this case as it relates to the adjustment with respect to the $ 3,000 bad debt violates the command of section 7522(a). Yet, the final sentence of section 7522(a) states that "An inadequate description * * * shall not invalidate such notice." What then remains of the responsibility of the IRS when the Commissioner fails to obey the command of section 7522(a)? Perhaps this Court could fashion some sort of remedy for the taxpayer, such as imposing the burden of proof, or at least the burden of going forward, on the Government. But no such remedy would appear to benefit petitioners here, since the bad debt adjustment itself represented an adjustment *537 in favor of petitioners, albeit to a limited extent. We leave to another day how best to deal with the appropriate sanction to be imposed on the IRS for failure of the deficiency notice to adequately explain any adjustment made in the notice. Decision will be entered for respondent. Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the year at issue.↩
2. The parties' stipulation contains no specific statutory citations and indeed fails to state specifically which "Federal Civil Statutes" were the basis for the lawsuit against petitioner. However, it would seem that the lawsuit was based on alleged failure of the employer to pay its employees time and a half for overtime as required by 29 U.S.C. sec. 207(a)(2) (1988) (derived from the Fair Labor Standards Act of 1938, as amended (FLSA)). And 29 U.S.C. sec. 203(d)↩ defines employer as "including any person acting directly or indirectly in the interest of an employer in relation to an employee".
3. During 1990, Mr. Ludwig was an employee of S & W Finish Lumber and Supply, Inc., and Mrs. Ludwig was an employee of California Enterprises.↩
4. Apart from the unsatisfactory nature of the explanation of the deficiency in the notice, we are quite satisfied that the determination of the deficiency was based upon an examination of petitioners' return and that the deficiency thus determined was generally related to the facts of this case. Accordingly, regardless of the holding in majority opinion of the panel in Scar v. Commissioner, 814 F.2d 1363 (9th Cir. 1987), revg. 81 T.C. 855 (1983), the present situation is sharply different from what was involved in that case, and the problem thought to exist in Scar↩ is not present here.
5. Among such grounds is respondent's contention on brief that such deduction should be disallowed because allowance thereof would frustrate a clearly defined public policy, citing Duncan v. Commissioner, T.C. Memo. 1993-370↩.
6. Such an analysis was suggested in Ihrig v. Commissioner, 26 T.C. 73, 76 (1956), but the point was not decided, because the taxpayer there did not then "contend that the bad debt provisions are any ground for his claimed deduction." Id.↩
7. Sec. 7522↩ is a 1990 revision and redesignation of former sec. 7521.